UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


WATER & SAND INTERNATIONAL            )
CAPITAL, LTD.                         )
                                      )
v.                                    )         C. A. No. 1:08-cv-88 RCL
                                      )
CAPACITIVE DEIONIZATION TECHNOLOGY    )
SYSTEMS, INC., d/b/a CDT SYSTEMS      )



CDT REPLY MEMORANDUM TO DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS
AND/OR FOR OTHER RELIEF


Plaintiff Water & Sand International Capital, Ltd. ("Plaintiff" or "W&S, LTD") in

its opposition papers seeks to obfuscate reality.  It attempts to side-step meaningful

analysis of the circumstances relating to the extant forum selection clause; and in so

doing, makes light of (a) the predicate necessary for a forum selection clause to control

and in the process (b) ignoring the limitation in the language of the selection clause at

issue.[1]

Seeking to avoid the well established "first to files" rule, W&S, LTD purports to

find a frustrated Capacitative Deionization Technology Systems, Inc. ("Defendant" or

"CDT") looking to "dodge" this selection clause through some allegedly nefarious rush

to  the court house. And even then what may yet be its most basic flaw, W&S, LTD

---

[1] In our initial filing we erroneously stated that Mr. Nosal was the CDT "general counsel."  We apologize
for this unintended nomenclature. In fact, however, Mr. Nosal did serve as an ongoing legal advisor to CDT
(see Attachment A to the Supplemental Affidavit of John Davies reflecting only one of many legal
billings—this one encompassing outstanding invoices of several hundred thousands dollars with a
generalized description of the legal services performed. In both a legal capacity and in an advisory group
capacity, Mr. Nosal's legal background and experience influenced decisions of the company. He was by no
means a passive bystander. As a legal advisor and as a general advisor, he served in a fiduciary capacity to
CDT, and most assuredly did so at the time of the loans in question.

provides no support for its unworn and unsupported assertion that Water & Sand International Capital, Inc. (W&S, INC.) the payee of the notes at issue, is one and the same as the plaintiff herein, W&S, LTD. Obviously, a plaintiff suing on a promissory note must be one and the same as the note maker absent an assignment, and there is no such allegation here.[2]

These and other issues are before the federal court in Dallas which Plaintiff acknowledges, as indeed it must, that the Texas cases are "related" to the instant one.  In the first cases filed on July 9, 2007 against Mr. Nosal personally, CDT (the defendant here, but Texas plaintiff) has alleged that Mr. Nosal is in breach of the fiduciary duty he owed CDT respecting his self dealing as to the promissory notes at issue.[3]  In the second case filed against W&S LTD in Texas state court on September 12, 2007 and removed to federal court by W&S, LTD on January 8, 2008, CDT is suing W&S, LTD for usury and related deceptions respecting the notes at issue.

Resolution of these and other related  issues (including, but not limited to whether W&S LTD is one and the same as W&S, INC.) are properly before the court in Texas for resolution there. The instant case may even be mooted when predicate factual issues are resolved in Texas. The instant case may be mooted, for example if W&S, LTD is found not to be the notes payee.

---

[2]  See at pp. 4-5 infra for further discussion as to the implausibility of W&S LTD's unsworn conclusory assertion to the contrary.

[3]  Mr. Nossal is in default in this litigation. He has a pending motion to set aside the default  which has not been ruled upon.  Notwithstanding that there was a copy of the Complaint "refused" at his home address, he rather lamely states in a November 14, 2007 affidavit that  he was "unaware" of such service and also personally is "unaware" that anyone else in his household "refused" to accept the papers,. (See Nosal Affidavit, Attachment B to the Davies Supplemental Affidavit). Indeed, Mr. Nosal does not deny it was refused, but simply states he is "unaware."

The Fifth Circuit in. <u>The Cadle Company v. Whatsaburger of Alice, Inc</u>, 174 F.3d 599 (1999) has aptly stated:

> The first-to-file rule…is essentially a forward-looking doctrine.  Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case <u>pending</u> in another court. (Emphasis in original)

Were the instant case to proceed, it would result in that as to which the <u>Cadle</u> court and virtually all others agree:  parallel proceedings should be avoided as a waster of juridical resources, and as also noted where "embarrassing inconsistencies" might occur as well. Indeed, any other approach flies in the face of common sense and sound judicial administration.

As to any asserted or implied accusations that CDT's Texas filings were a rouge to be first to the court house, the facts speak otherwise. There was no race.  Even if we were to assume that Mr. Nosal was unaware of the Texas lawsuits prior to his November 14, 2007 affidavit, there was even then a subsequent two month period <u>before</u> W&S, LTD (effectively Mr. Nosal's alter ego) brought the instant suit in the District of Columbia.  It is unchallengeable that it was January 16, 2008 before W&S, LTD got around to filing the instant lawsuit.  Accordingly, if there was a court house race, it was one which W&S, LTD was in no hurry to join.

The promissory notes moreover at issue were demand notes for which demand could have been made at an earlier time. If there was an end run effort, it was by W&S, LTD filing in this district after a default was entered against Mr. Nosal in Texas. The instant litigation should now be recognized for what it is--an effort by W&S, LTD and Mr. Nosal to extricate themselves from a fiduciary breach by Nosal and usury charges of his 100% owned company.

In our initial briefing we observed in reliance on <u>The Bremen v. Zapata Off-Shore Co</u>., 407 U.S. 1 (1972) that forum selection clauses are valid when "unaffected by fraud, undue influence or overweening bargaining powers." To this W&S LTD responds this "allegedly nefarious conduct is obscure."[4]  Yet to say such "nefarious conduct is obscure" though, is to take a myopic, if not totally blinded view of the matters of usury and fiduciary breach at issue in the Texas litigation.[5]

Further, not only is the payee of the promissory notes (W&S, INC.) different from the plaintiff herein (W&S, LTD), but unaddressed by W&S, LTD is the fact that even were the forum clause otherwise deemed controlling, it is by its very languages limited to "collection" of the promissory notes.  Nothing in this forum selection clause prohibits litigation of usury issues and/or related fiduciary breaches in Texas.  Moreover, the question of the compulsory counterclaim <u>vel</u> <u>non</u> also is before the Texas court.

It simply defies belief that a promissory note payable to W&S, INC. was meant to be a note on which W&S, LTD could sue.  For  W&S, INC. to be heard to say that it also known as W&S, LTD (and given the fact that Mr. Nosal is himself an attorney with many years of experience),[6]  it is unfathomable that the "also known as" language would have been omitted from the promissory notes, particularly when the notes total several million dollars. There is nothing of record in any of the three statements of by Mr. Nosal made

---

[4] <u>See</u> Plaintiff's Opposition to CDT's Motion to Dismiss at p. 3

[5]  <u>See</u> the Texas Complaints attachments to the Gutman Affidavit appended to our initial filing—the Motion to Dismiss.

[6] He states in paragraph 3 of his December 17, 2007 affidavit (Attachment 2 to the Davies Supplemental Affidavit—Exhibit A to this reply memorandum) that for a period of at least the past ten years "I have been a self-employed attorney practicing in the area of <u>corporate</u>, international and telecommunications…." (Emphasis added.)

under penalty of perjury[7] that would suggests that W&S, LTD is one and the same as W&S, INC.  Resolution of this very issue, of course, is now before the Texas court, and as noted above may well in and of itself moot any effort by W&S, LTD to collect on these notes.

Finally, Mr. Nosal's allegations on behalf of W&S, LTD lack real world probity challenging reason and common sense beyond the breaking point.   In an effort to escape responsibility, Mr. Nosal asserts in paragraph 8 of his February 19, 2008 Declaration (Exhibit 3 to the W&S, LTD filing), that the promissory notes at issue "were initially prepared by Joe Jones and subsequently by Phil Marshall." Interestingly he omits to state that Messrs.  Jones and Marshall, albeit employees of CDT were not even lawyers. (But see n. 8 below.)

To believe Mr. Nosal's position one would have to accept the following: that the borrower CDT was the drafter of the promissory notes; that several million dollars was loaned by his 100% owned company with the binding promissory notes drafted by non-lawyer employees of the borrower,[8]  and that the corporate lawyer/owner of the lender company, played at the most a passive role.  To the contrary; however, this Court might well take judicial notice that such procedures and/or approaches to commercial lending simply do not occur in the real world. Perhaps Mr. Nosal's position is best summered up by a Latin phase normally used in a different context--res ipsa loquitor.

---

[7]  Two in Texas –one on November 14, the second on December 17, 2007 (see attachments B&C to the Davies Supplemental Affidavit appended As Exhibit 1) and Nosal's February 19, 2008 Declaration in this litigation "under penalty of perjury." (Exhibit 3 to the W&S Opposition filing herein).  One would surely think that if there were supporting evidence and/or verification by Mr. Nosal, the sole shareholder and president of W&S, LTD. It would be set forth in at least one of this sworn statement.  However, there is no verification.

[8]  See Davies Affidavit at para. 5.

Given the foregoing circumstances, it is clear that there are issues for resolution in the Texas litigation which in fact will in be resolved in a manner that makes this litigation without justification.    Accordingly, CDT renews its prayer for relief herein that this case, be dismissed, or in the alternative, that this case be transferred to the United State District Court for the Northern District of Texas, Dallas Division, or that at a minimum this case be stayed until the factual issues in the related Texas litigation are resolved.

_____/s/_____

Stephen W. Grafman (032912)
Sharp & Associates
1215 19th Street, N.W.
Washington, D.C.  20036
202-467-1609

Attorneys for CDT Systems, Inc.

Certificate of Service

I certify that this filing was pursuant to court rule an electronic one, and that a hard copy was mailed as well to:

Glenn. Mitchell
David U. Fierst
Stein Mitchell, & Mezines, LLP
1100 Connecticut Avenue, N.W.
Washington, D.C.  20036

_____/s/_____
Stephen W. Grafman

February 26, 2008

# DAVIES

# AFFIDAVIT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WATER & SAND INTERNATIONAL CAPITAL, LTD. | § § § | |
| v. | § § § | CIVIL ACTION NO. 1:08-CV-00088-RCL |
| CAPACITIVE DEIONIZATION TECHNOLOGY SYSTEMS, INC., d/b/a CDT SYSTEMS, INC. | § § § § | |

**SUPPLEMENTAL AFFIDAVIT OF JOHN DAVIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR STAY PLAINTIFF'S CLAIM
BASED UPON THE COMPULSORY COUNTERCLAIM RULE**

STATE OF TEXAS          )(

COUNTY OF DALLAS      )(

BEFORE ME, the undersigned authority, on this day personally appeared the person known to me to be John Davies, who after being by me duly sworn, stated on his oath as follows:

1.    "My name is John Davies. I am in all respects authorized and qualified to make this affidavit and all of the facts and information contained herein are, of my own knowledge, true and correct in suplementation of my January 29, 2008 affidavit previously filed herein.

2.    I have reviewed the Declaration of Chester Nosal dated of February 19, 2007. Mr. Nosal's statement is replete with factual inaccuracies and misleading half-truths. Some, but far from all of these mis-statements are discussed below:

3.    In paragraph 2 of his Declaration Mr. Nosal declares that he is the president and sole shareholder of Plaintiff Water & Sand International Capital, *Ltd.* In dealing with CDT on the subject loans Nosal identified the lender as Water & Sand International

Capital, *Inc.* Further, based upon our research it has been determined that Mr. Nosal is connected to three separate companies, all doing business under the same Water & Sand International Capital, Ltd. name.

4.     In paragraph 4 of his Delcaration, Mr. Nosal appears to suggest that his involvement as counsel to CDT was limited. This is not so. CDT has invoices, including but not limited to Exhibit "A" submitted by Chester Nosal totalling in the hundreds of thousands of dollars. These invoices as seen for example in Exhibit "A" reflect various services that would be typically provided by outside counsel. Interestingly, a total of $200,000.00 of Mr. Nosal's bills to CDT for legal services were, at his request, converted to promissory notes payable to Water & Sand International Capital, *Inc.*

5.     In paragraph 6 of his Declaration Mr. Nosal suggests that the language of the promissory notes was drafted by Joe Jones and Phil Marshall. Neither is a lawyer. Although one of them may have retyped the form of the prior loans used by Nosal, neither composed the promissory notes.

6.     Attached hereto as Exhibits "B" and "C" are true and correct copies of Chester Nosal affidavits filed in the initial Dallas case of CDT vs. Chester Nosal, Case No. 3-07CV1215-P, which are respectively dated the 14th day of November, 2007 and the 17th day of December, 2007.

7.     As stated above this affidavit does not purport to correct all of the misleading and/or otherwise inaccurate assertions about me and CDT in Mr. Nosal's February 19, 2008 Declaration. Rather than using this affidavit to challenge the fallacy of each and every one of Mr. Nosal's falsehoods, all of these mis-statements will be addressed and amplified upon in detail in the ongoing and prior pending Texas litigation where such factual issues are already before the court."

**Supplemental Affidavit of John Davies**                                    Page 2

AFFIANT



John Davies

SUBSCRIBED AND SWORN TO before me this ___26ᵗʰ___ day of February, 2008.

STEPHANIE P. RUTHARDT
Notary Public, State of Texas
My Commission Expires
June 25, 2011

_Stephanie P. Ruthardt_

Notary Public in and for the State of Texas

My Commission expires: ___6-25-2011___

# DAVIES AFFIDAVIT

# Attachment A

# Chester W. Nosal
ATTORNEY AT LAW

2001 K Street, N.W.
Suite 800
Washington, D.C. 20006 USA

1 April 2003

VIA FAX (972-934-1592)

Mr. Dallas Talley
Chairman & CEO
CDT Systems, Inc.
13636 Neutron Road
Dallas, TX 75244

Dear Dallas:

Please find enclosed our invoice for professional services rendered to the Company for the period December 1, 2002 to March 31, 2003, including fees and disbursements of Pillsbury Winthrop. If you have any questions regarding the invoice, please do not hesitate to contact me.

Warm personal regards.

Very truly yours,

Chester W. Nosal



Tel: (202) 912-7120                                    Fax: (202) 912-7020

**CDT SYSTEMS, INC.**

CHESTER W. NOSAL                                                        TIN 52-1792239

FOR PROFESSIONAL SERVICES
rendered for the period December 1, 2002 to March 31, 2003,
in connection with the following:

Conferences, negotiations and drafting of various investment
agreements with various potential investors and loan agreements;
legal research regarding investment issues and meetings; review of
Texas and county economic development commitments; corporate
law issues including warrants, stock options and other rights and
service contract issues; trademark matters and response; Clark Vaught
dispute; ABB patent issues, and calls, conferences, discussions
with Company's management, directors, advisory board members,
consultants and others; inclusive of Pillsbury Winthrop (none this period).

AMOUNT DUE THIS INVOICE:

|  |  |  |
|---|---|---|
| Fees | $35,500.00 |
| Disbursements | 250.00 |
| TOTAL DUE THIS INVOICE | 35,750.00 |
| OUTSTANDING | 188,450.00 |

GRAND TOTAL DUE                                     $224,200.00

# DAVIES AFFIDAVIT

# Attachment B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAPACITIVE DEIONIZATION | § | |
| TECHNOLOGY SYSTEMS, INC. | § | CIVIL ACTION NO. |
| d/b/a CDT SYSTEMS, INC. | § | 3-07CV1215-P |
| | § | |
| v. | § | |
| | § | |
| CHESTER NOSAL, a/k/a CHET | § | |
| NOSAL | § | |

## AFFIDAVIT OF CHESTER NOSAL

| | |
|---|---|
| STATE OF FLORIDA | § |
| | § |
| COUNTY OF PALM BEACH | § |

BEFORE ME, the undersigned Notary Public, on this the _14_ day of November

2007, personally appeared Chester Nosal who, upon his oath, deposed and stated as

follows:

1.      My name is Chester Nosal. I am a resident of Palm Beach County, Florida. I am

fully competent to make this Affidavit. The facts and statements made herein are true

and correct and within my personal knowledge.

2.      I am not and have never been a resident of Texas.

3.      During the period 1998 to present, I have been a self-employed attorney practicing

in the area of international and corporate law in Washington D.C.

4.      I have been associated with Capacitive Deionization Technology Systems

("CDT") beginning in 1998 as a shareholder, an advisor and a consultant to the company

on international policy and opportunities. From 2000 to 2006, I served on the CDT

Exhibit "A"

B

advisory board which was an unpaid position through which I had no authority or responsibility related to the management or operations of CDT.

5.    From 1998 to 2002, I assisted CDT in a legal capacity. I have not provided any legal services to CDT since 2002.

6.    In or about November 2004, I was asked by management to assist in securing a loan to CDT which, as alleged in its Complaint, was experiencing financial difficulties and required interim financing. The loan was to be provided by Water & Sand International Capital, Ltd. a company I represented and owned which conducted business outside the United States. The loan was fully disclosed to the board of directors which, following a special telephonic meeting of the board, unanimously consented orally and in writing to the "loan proposed by Chester Nosal to provide Bridge Loan financing to the Company until necessary financing and working capital availability is completed for the proposed Manufacturing Facility in Bryan, Texas." The corporate resolution further provided that "the only subject on the agenda was the One-Million-Dollar ($1,000,000) demand note proposed by Chester Nosal...." The Demand Note was attached and reviewed by the board of directors. A true and correct copy of the Corporate Resolution, dated November 10, 2004, is attached hereto as Exhibit "1."

7.    I do not and have never maintained an office or place of business in Texas.

8.    I am not and have never been a member of the State Bar of Texas.

9.    I do not and have never had an agent or representative in Texas.

10.    I do not and have never owned or rented property in Texas.

11.    I do not and have never paid taxes in Texas.

12.    I do not and have never held bank accounts in Texas.

2

13.   Since 1998, I have visited Texas on three occasions at the behest of CDT. More than two and one half years have elapsed since my last visit to the state.

14.   During August, September and October of 2007, I was traveling extensively on business primarily outside the United States. I was gone about six weeks during that twelve week period.

15.   I am unaware of any attempt at service of the Complaint having been made to my residence via certified mail or otherwise. I am also unaware of anyone in my household having "refused" to accept any certified correspondence.

FURTHER AFFIANT SAYETH NOT.

_____
Chester Nosal

SWORN AND SUBSCRIBED TO BEFORE ME, the undersigned Notary Public, on this the _14th_ day November 2007, by Chester Nosal, to which witness my hand and official seal of office.

Printed Name: _Gregg W. Gullo_

Notary Public in and for the State of Florida

Commission Expires: _March 2, 2008_

> GREGG W. GULLO
> MY COMMISSION # DD 295693
> EXPIRES: March 2, 2008
> Bonded Thru Notary Public Underwriters

3

# CAPACITIVE DEIONIZATION TECHNOLOGY SYSTEMS, INC.
## (CDT Systems, Inc.)

## CORPORATE RESOLUTION

## November 10, 2004

Pursuant to the by-laws of Capacitive Deionization Technology Systems Inc. a special telephonic meeting of the Board of Directors was held on this 10th day of November 2004.

The only subject on the agenda was the One-Million-Dollar ($1,000,000) Demand Note proposed by Chester Nosal to provide Bridge Loan financing to the Company until necessary financing, and working capital availability, is completed for the proposed Manufacturing Facility in Bryan, Texas.

After discussions with individual Board Members, as well as Members of the Company's Advisory Board, the Members unanimously agreed that the terms of the Attached Demand Note be approved. In addition, the Members were provided with the "Use of Funds" which have been incorporated as an attachment to the Demand Note.

Exhibit "1"

# DAVIES
# AFFIDAVIT

# Attachment
# C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAPACITIVE DEIONIZATION | § | |
| TECHNOLOGY SYSTEMS, INC. | § | CIVIL ACTION NO. |
| d/b/a CDT SYSTEMS, INC. | § | 3-07CV1215-P |
| | § | |
| v. | § | |
| | § | |
| CHESTER NOSAL, a/k/a CHET | § | |
| NOSAL | § | |

AFFIDAVIT OF CHESTER NOSAL

| | |
|---|---|
| STATE OF FLORIDA | § |
| | § |
| COUNTY OF PALM BEACH | § |

BEFORE ME, the undersigned Notary Public, on this the 17th day of December 2007, personally appeared Chester Nosal who, upon his oath, deposed and stated as follows:

1.    My name is Chester Nosal. I am a resident of Palm Beach County, Florida. I am fully competent to make this Affidavit. The facts and statements made herein are true and correct and within my personal knowledge.

2.    I am not and have never been a resident of Texas.

3.    During the period 1998 to present, I have been a self-employed attorney practicing in the area of corporate, international and telecommunications in Washington D.C.

4.    In 1998, Capacitive Deionization Technology Systems' ("CDT")(formerly Far West Group) principal place of business was located in Tuscon, Arizona. CDT moved its principal place of business to Texas in or about 2001.

C

5.    I have been associated with CDT since 1998 as a shareholder, an advisor and a consultant to the company on international policy and opportunities. In or about 1998, CDT, operating in Arizona, approached me in Washington D.C. to assist it in international law representation.

6.    From 1998 to 2002, I provided ongoing international legal representation to CDT from my office in Washington D.C. I did not advise CDT as to general corporate matters. In early 2004, I was asked by the current CEO to assist the company in reaching settlement with its former CEO. This one-off engagement included working with CDT's litigation counsel and took approximately 20 to 30 hours. To the best of my recollection, I have not provided any legal services to CDT since June 2004.

7.    From 1998 to 2006, I served on the CDT advisory board through which I had no authority or responsibility related to the management or operations of CDT.

8.    In or about November 2004, as alleged in its Amended Complaint, CDT was experiencing financial difficulties and requested a loan. I was advised by CDT's CEO that the loan was fully disclosed to the board of directors and that following a special telephonic meeting with faxed signature pages, the board unanimously consented to the loan. The corporate resolution provided to me by CDT's CEO evidenced unanimous approval of the "loan proposed by Chester Nosal to provide Bridge Loan financing to the Company until necessary financing and working capital availability is completed for the proposed Manufacturing Facility in Bryan, Texas." The corporate resolution further provided that "the only subject on the agenda was the One-Million-Dollar ($1,000,000) demand note proposed by Chester Nosal...." The corporate resolution provided that the Demand Note was attached and reviewed by the board of directors. A true and correct

2

copy of the Corporate Resolution provided to me by CDT's CEO, dated November 10,

2004, is attached hereto as Exhibit "1."

9.      I do not and have never maintained an office or place of business in Texas.

10.     I am not and have never been a member of the State Bar of Texas.

11.     I do not and have never had an agent or representative in Texas.

12.     I do not and have never owned or rented property in Texas.

13.     I do not and have never paid taxes in Texas.

14.     I do not and have never held bank accounts in Texas.

15.     To the best of my recollection, I recall having visited Texas only three or four

times within the last nine years. In or about July 2005, I traveled to Texas to attend a

shareholders meeting held by Plaintiff, at the request of Plaintiff. In the Fall of 2006, at

the behest of Plaintiff, I traveled to Texas to meet with a potential investor in an effort to

locate additional sources of financing for CDT. I did not travel to Texas in connection

with the loans made to CDT by W&S. To the extent there is any inconsistency between

this and my prior affidavit, my present recollection has been refreshed by a review of

evidence filed by Plaintiff in this case.

16.     I am unaware of any attempt at service of the Complaint having been made to my

residence via certified mail or otherwise. I am also unaware of anyone in my household

having "refused" to accept any certified correspondence.


FURTHER AFFIANT SAYETH NOT.

Chester Nosal

3

SWORN AND SUBSCRIBED TO BEFORE ME, the undersigned Notary Public. on this
the 17th day December 2007, by Chester Nosal, to which witness my hand and official
seal of office

Printed Name: Gregg W Grillo

Notary Public in and for the State of Florida

Commission Expires: March 2, 2008

GREGG W. GRILLO
MY COMMISSION # DD 295693
EXPIRES: March 2, 2008
Bonded Thru Notary Public Underwriters

4

# CAPACITIVE DEIONIZATION TECHNOLOGY SYSTEMS, INC. (CDT Systems, Inc.)

## CORPORATE RESOLUTION

### November 10, 2004

Pursuant to the by-laws of Capacitive Deionization Technology Systems Inc. a special telephonic meeting of the Board of Directors was held on this 10th day of November 2004.

The only subject on the agenda was the One-Million-Dollar ($1,000,000) Demand Note proposed by Chester Nosal to provide Bridge Loan financing to the Company until necessary financing, and working capital availability, is completed for the proposed Manufacturing Facility in Bryan, Texas.

After discussions with individual Board Members, as well as Members of the Company's Advisory Board, the Members unanimously agreed that the terms of the Attached Demand Note be approved. In addition, the Members were provided with the "Use of Funds" which have been incorporated as an attachment to the Demand Note.

Exhibit "1"

Approval of the Board of Directors for Corporate Resolution Dated
November 10, 2004, to accept the Demand Note for $1,000,000:

BY: _____

Takeshi Ogata

**Approval of Board of Directors for Corporate Resolution Dated November 10, 2004, to accept the Demand Note for $1,000,000:**

BY: _____  4/12/04

Ann Cochran Heywood

Approval of the Board of Directors for Corporate Resolution Dated
November 10, 2004, to accept the Demand Note for $1,000,000:

BY: _____
        Tom Friezen