UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WATER & SAND INTERNATIONAL CAPITAL, )
LTD.                                )
                                    )
V.                                  )
                                    )    C.A. No. 08-CV-88 - RCL
CAPACITIVE DEIONIZATION TECHNOLOGY  )
 SYSTEMS, INC. D/B/A CDT SYSTEMS, INC. )
                                    )

DEFENDANT'S FURTHER DOCUMENTATION OF
IT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
SUPPLEMENTAL AFFIDAVIT

On March 19, 2008, defendant Capcacitative Deionization Technology Systems, Inc. ("CDT") filed its opposition to the motion of plaintiff Water & Sand International Capital, LTD. ("W&S") for leave to file a March 11, 2008 affidavit by one Philip Marshall.  In further opposition to W&S's motion, appended is a April 1, 2008 Declaration of Mr. Marshall, which counsel for CDT in the related Texas litigation advises is being filed there today.  In this April 1, 2008 Declaration, Mr. Marshall states he is "now convinced that a number of statements that I made in the March 11, 2008 affidavit [filed by W&S] may have been technically inaccurate and perhaps misleading." He then goes on to affirm that the purpose of this April 1, 2008 Delectation is "to clarify some of these instances to make sure that any testimony that I provide is consistent with the actual truth and facts."

The Court, accordingly, should deny W&S's motion to supplement the record with Mr. Marshall's affidavit March 11, 2008. Further CDT reaffirms that this Court should grant its motion to dismiss and/or for related relief as set forth in its opposition filed herein on February 12, 2008.

>_____/s/_____
>Stephen W. Grafman (32912)
>Sharp & Associates
>1215 19th Street NW
>Washington, DC 20036
>(202) 467-1609
>
>Counsel for Defendant CDT

April 3, 2008

## Certificate of Service

I certify that a copy of the foregoing supporting memorandum was served electronically this 19th day of March, and by first class mail, postage prepaid, to counsel for the plaintiff W&S:

>Glenn A. Mitchell
>David U. Fierst
>Stein, Mitchell & Mezines, LLP
>1100 Connecticut Avenue, NW
>Suite 1100
>Washington, DC 20036

>_____/s/_____
>
>Stephen W. Grafman (32912)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAPACITIVE DEIONIZATION TECHNOLOGY SYSTEMS, INC., d/b/a CDT SYSTEMS, INC. | § § § § | |
| v. | § § § | CIVIL ACTION NO.: 3:08-cv-00038 |
| WATER & SAND INTERNATIONAL CAPITAL, INC. | § § § | |

## DECLARATION OF PHIL MARSHALL

1. "My name is Phil Marshall. I am over the age of 21 years. I have never been convicted of any felony. I am in all respects competent to testify to the matters contained in this Declaration and have personal knowledge of the facts stated herein.

2. On the 11th day of March, 2008, I reviewed, swore to and executed an affidavit that was to be filed in the case of Capacitive Deionization Technology Systems, Inc. vs. Water & Sand International Capital, Inc., Case No. 3:08-CV-00038, pending in the United States District Court for the Northern District of Texas, Dallas Division. On the morning of the 1st day of April, 2008, I was contacted by Greg Gutman, attorney for CDT and John Davies concerning the content of my affidavit of 11th day of March, 2008. Upon discussion, reflection upon the facts addressed in the affidavit and my recollection, I am now convinced that a number of statements that I had made in the March 11, 2008 affidavit may have been technically inaccurate and perhaps misleading. It is the purpose of this Declaration to clarify some of these instances to make sure that any testimony that I provide is consistent with the actual truth and facts.

3. Concerning the telephone conversation referenced in paragraph 7 of my Affidavit dated March 11, 2008, I do recall a discussion with Tom Friezen concerning the proposed lending from Nosal's company. I also recall discussing the terms of a potential loan. I can not however conclusively state that I specifically remember that Dallas Talley or I told Tom Friezen the complete extent of the interest rates proposed to be charged by Nosal. Particularly, we did not and could not have told Tom Friezen about Nosal's intent to compound interest on a monthly basis, because as of that time he had not disclosed to us that that was his intent when he inserted language into the promissory notes to the effect that interest is payable "monthly". In connection with the telephone conference call with Tom Friezen, to the best of my recollection at this point, I do not recall that there was any discussion concerning the choice of venue provision designating Washington, D.C. as the venue for any collection suit involving any Nosal loans. Also, Nosal never discussed with

Declaration of Phil Marshall

Page 1

me and I am not aware of any discussion that Nosal had with any other member of the board concerning the significance of the choice of venue provisions in all of the seven notes that were given to Water & Sand, or the choice of law provisions that were inserted into the notes executed in 2006.

4. Concerning the November 2006 promissory note in the face amount of $200,000.00, I do not recall any discussion with John Davies concerning the terms of the proposed promissory note or his state of mind concerning the loans or the terms of the promissory note.

5. With respect to any of the Water & Sand notes, I can say to the best of my recollection that none of the promissory notes were drafted by any member or employee of CDT, and in particular, it was not any member or employee of CDT, including myself, that inserted any choice of venue or choice of law provisions into any of the promissory notes.

6. When I state in paragraph 8 of my March 11th affidavit that I "understood" the terms of the promissory notes, including their choice of law and venue features, I can only state that as someone without any legal training. I can not say that I fully understood all of the ramifications that would come into play as a result of the choice of law or choice of venue provisions, and Chester Nosal did not volunteer to explain any of that to me.

7. At some point I recall that Dallas Talley told me that the remaining members of the board of Directors signed some type of a written consent to the Nosal/Water & Sand loans. I have no personal knowledge whatsoever on that point and I understand that some of the remaining Directors have stated that they have never seen the document in question and believe that their signatures were forged.

8. With respect to my testimony in paragraph 9 of my March 11, 2008 affidavit, whatever understanding I had regarding the venue and choice of law features did not reflect any disclosures made to me concerning these issues by Chester Nosal. Further, contrary to the implications of what I stated in paragraph 9, I have no personal knowledge whatsoever if Dallas Talley communicated any information concerning the Nosal/Water & Sand loans to any remaining members of the Board of Directors, other than what has been previously stated about our single telephone call to Tom Friezen. Also, my statement concerning no one on the Board of CDT "objecting" to the loans is limited to my personal knowledge. I have no other information concerning any objections that may have been relayed to anyone else.

9. I declare under penalty of perjury that the foregoing statements are true and correct."

Executed this 1st day of April, 2008.

_Phil Marshall_