## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Water & Sand International Capital,    )
Ltd.                                   )
                                       )
v.                                     )        C.A. No. 1:08-CV-88-RCL
                                       )
Capacitive Deionization Technology Systems,  )
Inc.                                   )
_____)

## NOTICE OF RULINGS IN RELATED CASES

Plaintiff Water & Sand International Capital, Ltd. (W&S) hereby notifies the

Court of rulings in related cases that will affect the pending motion brought by

Capacitive Deionization Technology Systems, Inc. (CDT) to dismiss, transfer or

stay this action.

CDT based its motion largely on the assertion that the forum selection

clause is not enforceable, and argued that this case should be dismissed in favor

of the related suits brought by CDT in the United States District Court for the

Northern District of Texas.  The enforceability of the forum selection clause was

raised as an issue in one of the cases pending in the Northern District of Texas.

The court ruled that it is enforceable, and it consequently ruled that suit to

enforce the notes at issue in this case must be brought in this jurisdiction, not

Texas.

The District Court in the Texas litigation issued two relevant orders, both

dated April 21, 2008:

1.  In CDT's suit against Water & Sand International Capital, Inc., the court

granted a motion to dismiss on the grounds that the forum selection clause

requiring the dispute to be litigated in this jurisdiction is valid and enforceable,

denied the motion for default judgment against W & S, and denied all other

motions as moot.

2.  In the companion suit by CDT against the individual, Chester Nosal,

the court granted the motion to set aside the default, and denied the motion to

dismiss.

Copies of the two orders from the District Court in Texas are attached.

Respectfully submitted,

/s/ David U. Fierst
Glenn A. Mitchell (#052233)
gamitchell@steinmitchell.com
David U. Fierst (#912899)
dfierst@steinmitchell.com
Stein, Mitchell & Mezines, LLP
1100 Connecticut Avenue
Suite 1100
Washington D.C. 20036
Tel:  202-737-7777
Fax: 202-296-8312

April 23, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAPACITIVE DEIONIZATION | § | |
| TECHNOLOGY SYSTEMS, INC., | § | |
| d/b/a CDT SYSTEMS, INC., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | 3:08-CV-0038-P |
| v. | § | |
| | § | |
| WATER & SAND INTERNATIONAL | § | |
| CAPITAL, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Now before the Court are the following:

1.  A Motion for Leave to Conduct Discovery (the "Motion for Discovery")
    filed by Plaintiff Capacitive Deionization Technology Systems, Inc.
    ("CDT") on January 18, 2008[1];

2.  A Motion to Enjoin Prosecution of Compulsory Counterclaim in Another
    Forum (the "Motion to Enjoin") filed by Plaintiff CDT on January 29,
    2008[2];

3.  A Motion to Dismiss First Amended Complaint (the "Motion to
    Dismiss") filed by Defendant Water & Sand International Capital, Inc.
    ("Water & Sand") on February 1, 2008[3];

4.  A Notice of Defendant's Failure to Oppose or Contest Plaintiff's Position
    that Defendant's Venue Objection Is Untimely and Waived and Request

---

[1]  A Response was filed by Water & Sand on February 1, 2008. A Reply was filed on February 8, 2008.

[2]  A Response was filed by Water & Sand on February 19, 2008. A Reply was filed on February 26, 2008.

[3]  A Response was filed by CDT on February 21, 2008. A Reply was filed on March 7, 2008.

for Entry of Order (the "Request for Entry of Order") filed by Plaintiff CDT on March 1, 2008[4]; and

5.    A Motion for Leave to File Supplement to Motion to Dismiss First Amended Complaint (the "Motion to Supplement") filed by Defendant Water & Sand on March 19, 2008[5].

After careful consideration and for the reasons stated below, the Motion for Discovery is denied as MOOT; the Motion to Enjoin is denied as MOOT; the Motion to Dismiss is GRANTED; the Request for Entry of Order is DENIED; the Motion to Supplement is denied as MOOT.

## BACKGROUND

This case was originally filed in Texas state court in September 2007 by CDT,[6] a technology start-up company incorporated under the laws of Nevada, and maintaining its principal place of business in Addison, Texas. (Davies Aff. ¶ 4.) The original petition was amended on December 21, 2007. (Mot. Dismiss 3.) On December 20, 2007, Water & Sand filed its Special Appearance, challenging jurisdiction in the state court. (*Id.*) On January 8, 2008, Water & Sand filed its Notice of Removal of this case from the state district court to this Court. (*Id.*)

---

[4] A Response was filed by Water & Sand on March 24, 2008.

[5] A Response was filed by CDT on April 3, 2008.

[6] Water & Sand is incorporated under the law of Delaware and maintains a principal place business in St. Maarten, Netherlands Antilles. The amount in controversy exceeds $75,000 and, based on the pleadings, federal jurisdiction is proper under diversity of citizenship. *See* 28 U.S.C. § 1332(a).

The action arises from a series of loans that Water & Sand extended to CDT to support its continuing operation. (Am. Compl. ¶ 2.) These lending activities began in November of 2004 and consisted of "a number of advances" which were eventually rolled into new loans. (Pl.'s Resp. Mot. Dismiss ("Response") Ex. A.) The Water & Sand promissory notes carried a 20% annual rate of interest until maturity, and an annualized rate of interest of approximately 43% for past maturity interest. (*Id.*) To date, the advances total approximately $2.2 million, with present outstanding principal and interest balance totaling close to $4 million. (*Id.*) CDT now alleges that interests charged in association with those loans exceeded the usury ceilings set by the Texas Finance Code. (Am. Compl. ¶ 4–5.) Accordingly, CDT seeks damages and relief for Water & Sand's alleged violation of Texas usury statutes. (*Id.*)

The last two loan agreements, one of which is a consolidation of all prior agreements, contain a Nevada choice-of-law clause, a state which CDT alleges "does not bear any reasonable relation to the transactions." (*Id.*) The choice-of-law clause is now a key subject matter of this suit. CDT claims that the clause was inserted into the contract in "a fraudulent attempt" to circumvent the operation of the Texas Usury Statutes" by Chester Nosal ("Nosal"), the principal of Water & Sand. (Resp. ¶ 1.) As such, CDT seeks a declaratory judgment to declare the choice-of-law provision invalid and unenforceable in violation of Texas public policy. (Am. Compl. ¶ 9.) Likewise, the loan agreements further contain a forum selection clause designating Washington, D.C. for any collection actions, a venue which CDT argues bears no "significant

relationship to the underlying loan transactions and the claims that Plaintiff CDT has asserted against Water & Sand in this case." (Resp. ¶ 24.)

A separate action seeking to recover debts under the loan agreements was filed on January 16, 2008 by Water & Sand in the federal district court in Washington, D.C., Case No. 1:08-CV-0088-RCL. CDT also filed a suit in this Court against Nosal, Water & Sand's principal, alleging breach of fiduciary duty because he allegedly served as CDT's outside counsel and member of its management team at the time when these disputed loan transactions were executed, Case No. 3-07-CV-1215-P. (Resp. ¶ 18.)

## ANALYSIS

### A.    Motion to Dismiss

Defendant Water & Sand moves this Court to dismiss CDT's First Amended Original Petition under Fed. R. Civ. P. 12(b)(3), arguing that the forum selection clause establishes Washington, D.C. as the required forum. (Mot. Dismiss 5.) It also seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction over Water & Sand, a non-resident corporation, with insufficient minimum contacts with the State of Texas sufficient to confer jurisdiction under the Texas long-arm statute. (*Id.* at 14.) In response, CDT first asserts that Water & Sand has waived its venue objection under Rule 81(c) because this Motion to Dismiss was untimely filed after the deadline with regard to removed cases. (Resp. ¶ 8–11.) CDT further argues that the forum selection clause is inapplicable and unenforceable, and Water & Sand's conduct does establish a personal jurisdiction before this Court under the Texas long-arm statute. (Id. at ¶ 12–24.)

Order
3:08-CV-0038-P
Page 4 of 12

*1. Waiver Under Rule 81(c)*

CDT has repeatedly argued that Defendant's Motion to Dismiss under Rule 12(b) in objection to venue has been waived because Water & Sand's consolidated Motion to Dismiss was filed on February 1, 2008. CDT argues that the Motion was filed past the deadline set by Rule 81(c) with respect to a removed action from state courts. It further argues that the 12(b) objections are also waived under Rule 12(h)(1) for failure to raise them in Water & Sand's first responsive pleading at the state court.

The pertinent portion of Rule 81(c) provides that after a defendant removes an action to federal court before answering a complaint, "the defendant has twenty days from receipt of the initial pleading or service, or five days after filing a notice of removal, whichever is longer, to file a responsive pleading or motion." *See* Fed. R. Civ. P. 81(c); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007). The Fifth Circuit has held that "Rule 81(c) merely set the deadline for [defendant] to make its first responsive pleading or motion...." *Id.* at 141 (holding that defendant satisfied Rule 81(c) because it had filed a motion to dismiss in Ohio state court prior to the transfer of the case to the Northern District of Texas). Any responsive pleading filed by a defendant will satisfy the requirement under Rule 81(c).

Before the notice of removal, Water & Sand filed a Special Appearance before the state court. A Special Appearance could be treated as equivalent to a motion to dismiss in Texas state courts. *See, e.g., Tabor, Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc.*, 237 S.W.3d 762, 769 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (defendant's motion to dismiss was

treated as a special appearance by the trial court). By filing its Special Appearance, Water &
Sand has satisfied the requirements under Rule 81(c). On the other hand, a Special Appearance
pleading under Texas law also differs from the defenses listed under Federal Rule 12. It must be
filed before any other motion or pleading could be filed. Tex. R. Civ. P. 120(a)(1). A filing of
any other motion prior to a Special Appearance pleading could actually risk waiving the right to
challenge the state court's jurisdiction by a Special Appearance proceeding. *See Exchequer Fin.
Group, Inc. v. Stratum Dev., Inc.*, 239 S.W.3d 899, 905 (Tex. App.—Dallas 2007, no pet.).
Therefore, the Court finds that Water & Sand's Motion to Dismiss is not barred under Rule
12(h)(1) because there is no law indicating that a Special Appearance pleading under Texas state
law should be treated as one of those barring defense motions or pleadings under the federal rule.

2. *The applicability of the forum selection clause*

As to the forum selection clause, CDT first argues that the clause is not applicable to this
case because the contract terms limit its application only to actions related to the collection of
loan payments. It further argues that CDT's usury action against Water & Sand does not fall
within the scope.

The applicability of a forum selection clause depends on whether the substance of the
claims relates to the scope of the clause. *Cf. Aerus L.L.C. v. Pro Team, Inc.*, No. 3:04-CV-1985,
2005 WL 1131093, at *7 (N.D. Tex. May 9, 2005) (holding that if the substance of the claims
does not fall within the scope of the forum selection clause, the clause does not apply). Contrary
to CDT's contention, the Court finds that the usury claims asserted in the present case fall within

the scope of the forum selection clause as CDT clearly aims to preclude any repayment of the loans through such a preemptive action. Moreover, CDT has taken a position that Water & Sand's debt collection suit filed in the D.C. court is a compulsory claim to its usury claims in the present case. (Resp. ¶ 6.) Such position appears to contradict CDT's own argument that the usury claim is irrelevant to the collection of debts while it admits at the same time that they are compulsory claims to each other. Therefore, the Court concludes that the forum selection clause is applicable in the present case because it directly relates to the collection of debts under the disputed loan agreements.

### 3. The enforceability of the forum selection clause

The enforceability of a forum selection clause is governed under federal law when jurisdiction is based on diversity. *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 2005). A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Haynsworth*, 121 F.3d at 962. Unreasonableness could exists where: (1) the forum selection clause was incorporated into the agreement as a product of fraud or overreaching; (2) the party opposing enforcement of a forum selection clause will be "deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the chosen law is fundamentally unfair in that it deprives the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public

policy of the forum state. *Id.* (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991); *M/S Bremen*, 407 U.S. at 12–13, 15, 18).

CDT focuses its arguments on the first, second, and fourth of these exceptions. It actually objects to Water & Sand's argument regarding the fairness of the choice-of-law clause in the response. (Resp. ¶ 29.) CDT contests that the issue with respect to the choice-of-law clause goes to the merits of this case, and a discussion here would be untimely and improper. (*Id.*) The Court agrees, and only addresses the other arguments put forth by both parties. The question regarding the enforceability of the choice-of-law clause will not be prematurely decided here while the dispute is on the venue itself.

Generally, a finding of fraud and overreaching "must be specific to a forum selection clause in order to invalidate it." *Haynsworth*, 121 F.3d at 963. The resisting party bears a "heavy burden of proof." *Id.* Mere allegation of fraud in the signing of the contract is not sufficient to invalidate a forum selection clause. *Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co.*, No. SA-05-CV-172-XR, 2005 WL 1862631, at *5 (W.D. Tex. July 8, 2005) (holding that "[f]raud may invalidate a forum selection clause, but only if the inclusion of that clause, as opposed to the signing of the entire contract, was the product of fraud.").

In a nutshell, CDT's fraud and overreaching claim rests on allegations that Nosal, Water & Sand's principal, has failed to disclose his conflict of interest in the loan transactions because he worked at the same time as CDT's outside counsel and an advisory member of the management team. CDT further argues that Nosal unilaterally inserted the forum selection clause

through overreaching and "undue influence" given his role in the company. Other arguments regarding the insertion of the choice-of-law clause and failure to disclose the interest rates charged in the agreements are irrelevant to discussion of the forum selection clause, therefore disregarded by the Court.

As to Nosal's failure to disclose his conflict of interest in the loan transactions, the Court finds no evidence in the record supporting such allegation. All the promissory notes executed in the series of transactions clearly listed Nosal as the representative of Water & Sand. If Nosal was indeed working as a member of CDT's management team, any conflict of interest is clearly disclosed to CDT. Contrary to the hotly contested choice-of-law clause, which was inserted only in the last two consolidated promissory notes executed by the parties, the same forum selection clause was in all the agreements from the very beginning. The simplicity of these one-page promissory notes and the consistent presence of the same forum selection clause in transactions executed within a time span of two or three years make it difficult to believe that the insertion of the forum selection clause was a product of fraud and overreaching. The evidence presented by CDT largely surrounds its contention regarding the choice-of-law clause. The only affidavit in the record is the one made by the new CEO installed after the disputed transactions. Therefore, the Court finds that CDT has not established fraud or overreaching with regard to the forum selection clause alone.

Second, CDT argues that the forum selection clause is unreasonable because the designated Washington, D.C. forum "lacks any significant connection to the underlying claims."

(Resp. ¶ 23.) CDT cites the *Von Graffenreid v. Craig* decision issued by this Court disregarding a forum a forum selection clause. (*Id.* (citing 246 F. Supp. 2d 553 (N.D. Tex. 2003).) CDT's reliance on the *Von Graffenreid* decision, however, is misguided and out of context. The court in *Von Graffenreid* emphatically explained that one of the two major factors it considered when reaching the conclusion was the fact that the forum selection clause was considered permissive instead of mandatory, which is not the case here. A Washington, D.C. forum may be inconvenient or expensive for CDT given its current financial situation. High cost and inconvenience alone, however, are not sufficient to render a forum selection clause unreasonable, and thus unenforceable. *See, e.g., Braspetro Oil Servs. Co. v. Modec (USA), Inc.,* 240 Fed. App. 612, 617 (5th Cir.2007) (finding that enforcement of a forum selection clause was not unreasonable simply because "it would be very expensive and take a long time to bring suit ....."). CDT might have made a risky decision and put itself in a disadvantageous position, but the Court is not in a position to rescue a business from unfavorable deals unless mandated by law. After all, the Court can not find that a Washington, D.C. venue constitutes a gravely inconvenient or unfair forum for a Texas company.

Finally, CDT asserts that enforcement of the forum selection clause contravenes a strong public policy under Texas law. That is, the forum selection will evade the enforcement of Texas usury statutes that prohibit excessive interest rates charged in loan agreements. Although Texas does have a public policy against usury, the policy is not "inviolable." *Sw. Livestock & Trucking Co., Inc. v. Ramon,* 169 F.3d 317, 323 (5th Cir. 1999) (upholding a 50 percent interest rates

initially agreed between the Texas corporation and its Mexican lender). However, this argument goes to the choice-of-law provision. Enforcement of the forum selection clause is in no way related to Texas' policy regarding usury. The Court concludes that the enforcement of the forum selection clause would not contravene a strong public policy under Texas law.

Accordingly, for the reasons discussed above, the Court finds that the forum select clause is not unreasonable, therefore enforceable under the circumstances.

    4. *Personal Jurisdiction*

As the Court has concluded that the forum selection clause in the loan agreements is enforceable and constitutes sufficient basis for dismissal, it will not labor to address the lack of personal jurisdiction argument forwarded by Water & Sand.

**B.   Motion to Supplement**

Because the Court is able to reach a conclusion on the Motion to Dismiss based on current evidence in the record, Water & Sand's Motion to Supplement is denied as MOOT.

**C.   Request for Entry of Default**

For reasons discussed above regarding the venue objection waiver, the Court finds that Water & Sand's Motion to Dismiss is timely filed and not barred under either Rule 81(c) or Rule 12(h)(1). Therefore, the Court DENIES CDT's Request for Entry of Default.

**D.   Motion for Discovery**

As this Order disposes of the whole suit, CDT's Motion for Discovery is denied as MOOT.

**Order**
**3:08-CV-0038-P**
**Page 11 of 12**

**E.    Motion to Enjoin**

As this Order disposes of the whole suit, CDT's Motion to Enjoin is also denied as MOOT.

## CONCLUSION

For the reasons discussed above, the Court concludes that the forum selection clause in the loan agreements is valid and enforceable. The forum selection clause itself is dispositive with regard to the venue challenge asserted by Defendant Water & Sand. Accordingly, CDT's Motion for Discovery is denied as MOOT; CDT's Motion to Enjoin is denied as MOOT; CDT's Request for Entry of Order is DENIED; Water & Sand's Motion to Supplement is denied as MOOT; Water & Sand's Motion to Dismiss is GRANTED. All CDT claims against Water & Sand are now dismissed without prejudice, and CDT can file its compulsory claims in the action pending at the Washington D.C. district court as mandated by forum selection clause.

**It is so ordered.**

Signed this 21st day of April, 2008.


_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAPACITIVE DEIONIZATION | § | |
| TECHNOLOGY SYSTEMS, INC., | § | |
| d/b/a CDT SYSTEMS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:07-CV-1215-P |
| CHESTER NOSAL, a/k/a CHET NOSAL, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Now before the Court are the following:

1.   A Motion for a Hearing to Liquidate Damages (the "Motion for Hearing")
     filed by Plaintiff Capacitive Deionization Technology Systems, Inc. ("CDT")
     October 17, 2007;

2.   A Motion to Set Aside Entry of Default (the "Motion to Set Aside Default")
     filed by Defendant Chester Nosal November 15, 2007[1];

3.   A Motion to Dismiss for Lack of Personal Jurisdiction and for Lack of a
     Claim for Which Relief May Be Granted (the "First Motion to Dismiss")
     filed by Defendant Nosal November 15, 2007[2]; and

4.   A Motion to Dismiss First Amended Complaint for Lack of Personal
     Jurisdiction and for Lack of a Claim for Which Relief May Be Granted (the
     "Motion to Dismiss") filed by Defendant Nosal December 17, 2007.[3]

After careful consideration and for the reasons stated below, the Motion for Hearing is

---

[1]   A Response was filed by CDT December 5, 2007.  A Reply was filed December 20, 2007.

[2]   A Response was filed by CDT December 5, 2007.

[3]   A Response was filed by CDT January 7, 2008.

DENIED; the Motion to Set Aside Default is GRANTED; the First Motion to Dismiss is MOOT;

and the Motion to Dismiss is DENIED.

## I.    FACTUAL BACKGROUND

_____ This case was filed by CDT,[4] a technology start-up company that develops and markets high-

technology water filtration and other applications. (Am. Compl. ("Compl.") ¶ 7.) CDT is a Nevada

corporation with its principal place of business in Texas. (*Id.* ¶ 2.) According to the First Amended

Complaint (the "Complaint"), Nosal has "direct involvement in the management of CDT including

acting as its principal outside counsel and occupying a position on the advisory board which

provided [advice] and counsel to the board of directors of the company." (*Id.*) In the fall of 2004,

CDT was experiencing financial difficulties. (*Id.* ¶ 8.) Nosal agreed to provide CDT operating funds

through periodic loans evidenced by promissory notes. (*Id.*) These "bridge loan" lending activities

began in November of 2004 and consisted of "a number of advances" which were eventually rolled

into new loans. (*Id.*) The promissory notes were to be made payable to an entity called Water &

Sand International Capital, Inc. ("Water & Sand"). (*Id.*) CDT does not know the state or country

of Water & Sand's incorporation, but knew Water & Sand's address to be in St. Maarten,

Netherlands Antilles. (*Id.*)

Dallas Talley was CDT CEO and the only member of CDT's board of directors located in

Texas. (*Id.* ¶ 11.) Talley and Nosal developed a close working relationship, a relationship of which

the directors were generally aware of. (*Id.* ¶ 12.) In October 2006, when Talley was replaced as

---

[4]    CDT is incorporated under the laws of Nevada and has its principal place of business in Addison, Texas. Defendant Nosal is a resident of Florida. The amount in controversy exceeds $75,000 and, based on the pleadings, federal jurisdiction is proper under diversity of citizenship. *See* 28 U.S.C. § 1332(a).

CEO, a review of the corporate records by the new CEO revealed that the company had been "grossly mismanaged and that among other things, over his eight-year tenure as CEO, Talley had abused his position of power and trust and relaxed board oversight to embezzle from the company to the extent of around one million dollars." (*Id.* ¶ 12.) Talley executed the promissory notes on behalf of CDT and allegedly approved the loans with Nosal without disclosing material terms to the board of directors. (*Id.* ¶ 15.)

The Water & Sand promissory notes carried a 20% annual rate of interest until maturity, and an annualized rate of interest of approximately 43% for past maturity interest. (*Id.* ¶ 9.) To date, the advances total approximately $2.2 million, with present outstanding principal and interest balance totaling close to $4 million. (*Id.* ¶ 10.) The promissory notes contained a Nevada choice-of-law clause, a state which CDT alleges "does not have even a minimal relationship to the transaction or parties, other than the extremely tenuous connection that initially CDT was incorporated in [Nevada]." (*Id.* ¶ 15.) Likewise, the promissory notes contained a venue-for-collection clause of Washington, D.C., a venue which CDT argues has no logical connection with any party or the action. (*Id.*)

In short, this increasing debt is hindering CDT's ability to obtain additional financing or to raise additional capital. (*Id.* ¶ 19.) Nosal demanded that the entire balance be paid by the end of the third quarter in 2007. (*Id.*) CDT is not able to meet that demand, and is concerned that Nosal may attempt to "leverage his economic advantage to seize financial control of the company, possibly to its detriment and the detriment of the remaining shareholders, many of whom are very unhappy with the financial terms of the Nosal debt." (*Id.*)

## II.    PROCEDURAL HISTORY

CDT filed suit July 9, 2007 in this Court. Nosal was served notice of this lawsuit by certified mail from the office of Texas Secretary of State on September 14, 2007, and the process was returned to the Secretary bearing the notation "Refused." (*See* Docket # 4–5.)  On request from CDT, the Clerk of the Court entered default against Nosal October 15, 2007. (Docket # 7.) The Motion for a Hearing to Liquidate Damages on Default Judgement was filed and within one month, Nosal filed his Motions to Set Aside Default and to Dismiss. (*See* Docket # 9–11.)

## III.    ANALYSIS

### A.    Motion to Set Aside the Default

Federal Rule of Civil Procedure ("Rule") 55(c) permits a court to relieve a party from the entry of default for good cause.[5]  In making this determination, a court should consider "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented." *Buckley v. Donohue Indus. Inc.*, 100 Fed. Appx. 275 (5th Cir. 2004) (unpublished) (citing *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992)).

*1.    Willfulness.*  A court is to use an "excusable neglect" standard in determining willfulness. *CJC Holdings*, 979 F.2d at 64. Nosal's sole argument advanced in his brief or affidavit is that he is unaware of any attempt of service on his residence, and is not aware that any member of his household "refused" the service. (Mot. Set Aside Default App. Ex. A.)  Even if Nosal was

---

[5] Although Rule 60(b) permits a court to relieve a party from final judgment or order, that Rule does not control in this case. *See generally Fed. Sav. & Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067, 1069 (5th Cir. 1988). No order of the Court or judgment has been entered on the default.

avoiding process willfully, such a finding would not support entry of a default judgment, and therefore will not serve to render the default willful. *See Berthelsen v. Kane*, 907 F.2d 617, 622 (6th Cir. 1990), *noted in Lacy v. Sitel Corp.*, 227 F.3d 290, 292 n.5 (5th Cir. 2000) (contrasting willful evasion of process and willful failure to file responsive pleadings).

John Davies's affidavit recalls that this lawsuit was announced at a shareholders' meeting and on the company website within days of its filing. (Resp. App. 5.) As majority shareholder, Nosal would likely have been apprised of the goings on of the shareholder meeting but there is no actual evidence that Nosal knew of the lawsuit to support a finding of willfulness.[6]

**2.    *Prejudice to Plaintiff.*** No prejudice results to a plaintiff where setting aside the default does no harm to plaintiff except to require it to prove its case. *Cf. Lacy*, 227 F.3d at 293. "Mere delay" will not constitute prejudice unless the delay results in "the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (internal quotation marks omitted). The plaintiff must make the showing or it must appear in the record. *See id.* CDT does not argue that it would be prejudiced by setting aside the default.

**3.    *Meritorious Defenses.*** To succeed in setting aside a default, there must be a fair possibility that the defendant may win the litigation. *Fed. Savs. & Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067, 1070 (5th Cir. 1988). Here, as is discussed in much greater detail below, there is a fair chance that Nosal owed no fiduciary duty to CDT at the time the loans were made. This defense would likely serve to defeat CDT's breach of fiduciary duty claims against Nosal and is worthy of

---

[6] The Court is not able to make a finding of "willfulness" at this time; however, even if the failure to answer was willful, that factor alone would not serve to defeat the Motion to Set Aside the Default. That is, Nosal filed his motion within five weeks of the clerk's entry of default, has retained counsel, and is fully engaged in this litigation.

Order
3:07-CV-1215-P
Page 5 of 12

discovery. Additionally, the interest rate to be charged and the forum-selection clause were disclosed on the face of each of the notes in issue. The choice-of-law clause was disclosed in the last two Water & Sand notes. Given these facts, there exists a fair possibility that Nosal may prevail on the fraud and fraudulent inducement claims as well.

In light of these factors, Nosal's Motion to Set Aside Default is GRANTED and the case will proceed on the merits.

### B.    Motion to Dismiss

*1.    Personal Jurisdiction.* The plaintiff bears the burden of establishing a district court's personal jurisdiction over a nonresident defendant who moves for dismissal. *See Wilson v. Belin,* 20 F.3d 644, 648 (5th. Cir.1994). When a court rules on such motion without holding an evidentiary hearing, the plaintiff only has to establish a *prima facie* case for personal jurisdiction, as the court must accept as true all uncontroverted allegations in the complaint and resolve all factual conflicts presented by the parties' in the plaintiff's favor. *Wilson,* 20 F.3d at 648. As there has been no evidentiary hearing in this case, CDT only has to make a *prima facie* showing of personal jurisdiction. It is agreed that Nosal is not a resident of Texas, but of Florida. (Compl. ¶ 3)

When sitting in diversity, as here, a federal court has jurisdiction over a defendant to the extent authorized by state law. *Wilson,* 20 F.3d at 646. The Texas long-arm statute extends to the limits of federal due process. The inquiry then becomes whether requiring Nosal to submit to jurisdiction in Texas would impinge on his liberty interest to be free from suit in a forum with which he has little or no connection. *Wilson,* 20 F.3d at 647. That is, if (1) Nosal has purposefully availed himself of the benefits and protections of Texas through minimum contacts with Texas; and (2) the

exercise of jurisdiction over Nosal does not offend "traditional notions of fair play and substantial justice, then to subject him to suit here would not violate his right to due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–75, 476 (1985); *Int'l Shoe Co. v. Wa.*, 326 U.S. 310, 316 (1945).

     **a.** **Minimum contacts** may take the form of either general or specific jurisdiction. *Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327, 343 (5th Cir. 2003). To establish general jurisdiction, it must be shown the a defendant's contacts with the forum were "continuous and systematic." *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 445–46 (1952). In order to establish specific jurisdiction, a plaintiff must establish that the defendant's conduct with Texas "are such that he should *reasonably anticipate being haled into court there*" by purposefully directing his activities and contacts to Texas; and that the litigation has resulted from injuries arising from or relating to the defendant's activities directed at Texas. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (emphasis added); *Burger King Corp.*, 471 U.S. at 476. "Courts generally exercise specific jurisdiction over nonresident defendants that are engaged in commercial, profit-oriented enterprise." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485 (5th Cir. 2008); *see also Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 100 (1978). "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *See Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001). Specific personal jurisdiction may be based on intentional tortious conduct purposefully directed to Texas. *Cent. Freight Lines, Inc. v. APA Trans. Corp.*, 322 F.3d 376, 383 (5th Cir. 2003).

     Included with the Response to the Motion to Dismiss, CDT provides an affidavit as evidence

that Nosal provided legal counsel to CDT and last billed CDT for the service September 30, 2004. (Resp. Mot. Dismiss App. Ex. A.) Uncontroverted allegations in the Complaint are taken as true. *See Wilson*, 20 F.3d at 648. Nosal does not have an office or place of business in Texas, has not owned or rented property in Texas, has never paid taxes in Texas, has never held bank accounts in Texas, and has only visited Texas a handful of times in the past nine years. (Mot. Dismiss App. 1–3.) Uncontroverted contacts include: (1) Nosal's involvement in CDT management by acting as outside counsel and as a member of an Advisory Board; (2) the Water & Sand promissory notes which CDT alleges were fraudulently induced; (3) Nosal's working-relationship (and alleged collusion) with Tally as the former CEO of CDT; and (4) Nosal's majority share of CDT. (*See generally* Compl.) Over the courses of the loans, Nosal stood to earn between 20–43% interest from the loans he extended CDT, a citizen of Texas under 28 U.S.C. § 1332(c)(1), loans which give rise to the intentional tort claims in this case.

Although not systematic and continuous such that these contacts might establish general jurisdiction, Nosal was in a profit-oriented relationship with, and allegedly committed intentional torts against, a corporation whose principal place of business is Texas. Such facts subject Nosal to specific jurisdiction in the state. *See Cent Freight Lines, Inc.*, 322 F.3d at 381–83; *see also Claro v. Mason*, No. H-06-2398, 2007 U.S. Dist. LEXIS 13291, at *23 (S.D. Tex. Feb. 27, 2007) ("In Texas, representation of a client in the forum state by a nonresident attorney can give rise to specific jurisdiction against the attorney in a case based on an alleged breach of fiduciary duties owing to the client.").

**b. Traditional notions of fair play and substantial justice** take into account "(1) the

defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and

effective relief; (4) the judicial system's interest in efficient resolution of the controversies; and (5)

the shared interest of the several states in furthering fundamental substantive social policies." *See*

*Berry v. Lee*, 428 F. Supp. 2d 546, 557 (N.D. Tex. 2006) (Fitzwater, J.) (internal quotation marks

omitted). Nosal offers no additional argument against the fairness of subjecting him to jurisdiction

in Texas. Texas has a "strong interest in protecting its citizens from the commission of torts." *Id.*

The efficient resolution of the controversy favors Texas, especially in light of the fact that Nosal has

offered no alternative suggestion of forum. Nosal has done nothing to demonstrate any burden to

which he may be subjected by a Texas litigation. Upon considering these factors of fundamental

fairness, subjecting Nosal to jurisdiction in Texas would not offend traditional notions of fair play

and substantial justice. The Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

     *2.    Failure to State a Claim.* Nosal moves to dismiss CDT's Complaint under Federal

Rule 12(b)(6) because he did not owe a fiduciary duty to CDT at the time the loans were made; or

alternatively, that the Complaint identifies no conduct that would breach a fiduciary duty.

     **a. Legal standard.** Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint when

a defendant shows that the plaintiff has failed to state a claim for which relief can be granted. A

motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. A

*Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem.*

*Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

     "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct 1955, 1964–65 (2007) (citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. There must be "plausible grounds" on which the claim rests such that there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" in support of the claim. *Id.*

A court must render its decision taking the complaint in the light most favorable to the plaintiff and taking its allegations as true. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff. *Kansa Reinsurance Co. v. Cong. Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

Finally, a court limits its inquiry to whether plaintiff is entitled to offer evidence to support its claims and does not address whether plaintiff will ultimately prevail on the merits. *Johnson v. Dallas Ind. Sch. Dist.*, 38 F.3d 198, 205 (5th Cir. 1994) (citing *Taylor v. Led better*, 818 F.2d 791, 794 n.4 (11th Cir. 1987) (en banc)). However, dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the . . . defendants to liability." *Jacquez v. Procunier*, 801 F.2d 789, 791–92 (5th Cir. 1986).

**b. Fiduciary duty.** An attorney–client relationship is "highly fiduciary in nature." *Judwin Props. Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 506 (Tex. App.—Houston [1st Dist.] 1995, pet.

denied).[7] The duty includes utmost good faith and the absence of any concealment or deception. *See Combs v. Gent*, 181 S.W.3d 378 (Tex. App.—Dallas 2005, no pet.). Generally, an attorney's fiduciary duty ends when the attorney–client relationship ends. *See generally Wright v. Sydow*, 173 S.W.3d 534, 548 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Here, conflicting affidavits are presented on the issue of when Nosal's representation of CDT ended. Taking the allegations in the light most favorable to CDT, a question remains as to when Nosal's representation terminated and ended his fiduciary duty to the client. *See Leatherman*, 507 U.S. at 163.

   c. **Breach of the duty.** Assuming that Nosal did owe a duty to CDT at the times the loans were made and taking CDT's Complaint as true, the allegations against Nosal amount to (1) Nosal made a loan at allegedly usurious interest rates; (2) Nosal subordinated his fiduciary duties of good faith, loyalty and candor at the expense of CDT by omitting details of the loan terms to the board of directors (terms including Nosal's conflict of interest as attorney and member of management, the terms of the loan including the forum-selection and choice-of-law clauses, the compounding nature of the interest on the loans, and the fact that the interest rates were usurious under Texas law); and (3) Nosal aided, abetted, and colluded with Talley to obtain board approval of the loans. (Compl. ¶¶ 8–19.) Here, if the duty did exist it may have been breached by Nosal when he did not completely apprise the board of directors of details and material terms of the loans. A question of fact remains and the Motion will not be granted on this grounds.

   3. *Fraud Pleading.* Federal Rule 9(b) requires that in pleading fraud or mistake, a plaintiff must state "with particularity the circumstances constituting fraud or mistake. Malice, intent,

---

   [7] Although according to the Complaint, the Water & Sand notes have Nevada choice of law clauses, Nosal briefs the issues under Texas law. CDT does not cite any law on the fiduciary duty issue.

knowledge, and other conditions of a person's mind may be alleged generally." That is, the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what [the person] obtained thereby" must be alleged. *Truchman v. DSC Comm'cns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (alteration in original and internal quotation marks omitted). "Claims of breach of fiduciary duty are subject to Rule 9(b) when the alleged breach consists of fraudulent conduct." *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. 3:03-CV-2490-N, 2004 U.S. Dist. LEXIS 27582, at *8–9 (N.D. Tex. Nov. 15, 2004) (Godbey, J.). Here, Plaintiff argues that his breach of fiduciary duty claims are based not on fraudulent representations, but on omissions in the face of a duty to speak. In this circumstance, the "silence is equivalent to a false representation." *Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 140 (Tex. App.—Houston [1st Dist] 1995, writ denied). No more specific pleading than has been submitted is required in this circumstance.

**It is so ordered.**

Signed April 21, 2008.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE