UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WATER & SAND INTERNATIONAL CAPITAL, LTD.,** ) ) ) ) **Plaintiff** ) ) v. ) ) **CAPACITIVE DEIONIZATION TECHNOLOGY SYSTEMS, INC.** ) ) ) ) **Defendants.** ) ) | Civil Action No. 08-88 (RCL) |

## MEMORANDUM OPINION

Now before the Court comes defendant Capacitive Deionization Technology Systems, Inc.'s ("CDT") motion [7] to dismiss, and plaintiff Water & Sand International Capital, Ltd.'s[1] ("Water & Sand") motion [10] for leave to file supplemental affidavit. In the event that this Court denies CDT's motion to dismiss, it seeks to transfer venue to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to stay these proceedings. Upon consideration of the motions, opposition and reply briefs, the entire record herein, and applicable law, the Court finds that the motion to dismiss will be DENIED and that the motion for leave to file will be GRANTED. Further, the Court will DENY defendant's request to transfer this case to the Northern District of Texas or to stay these proceedings.

---

[1] According to plaintiff, Water & Sand International Capital, Ltd. is also known as Water & Sand International Capital, Inc. (*See* Compl. ¶ 1.) CDT disputes this assertion and suggests that the Court may find that the named plaintiff in this case is not the proper payee of the notes that form the basis of the parties' dispute. (*See* Reply to Mot. to Dismiss at 2.)

**I.     BACKGROUND**

Plaintiff Water & Sand is a Delaware corporation with principal place of business in St. Maarten, Netherlands Antilles. (*See* Compl. ¶ 1.) Chester Nosal, president and sole shareholder of Water & Sand, is an attorney with an office in the District of Columbia. (*See id.*) Defendant CDT, a Nevada corporation with principal place of business in Addison, Texas, is engaged in the business of water filtration and purification. (*See id.* ¶¶ 2, 5.) At issue in this dispute are two unpaid loans that Water & Sand made to CDT. (*See id.* ¶¶ 5–8.) Both loans are memorialized by consolidated demand notes dated November 1, 2006 and November 2, 2006. (*See id.* ¶¶ 7–8; Promissory Note (Nov. 1, 2006), Ex. 1 to Compl. [hereinafter Note 1]; Promissory Note (Nov. 2, 2006), Ex. 2 to Compl. [hereinafter Note 2].) The promissory notes were signed by former CDT chairman and chief operating officer Dallas Talley, and attested to by former CDT chief financial officer Phil Marshall. (*See* Compl. ¶¶ 7–8; Note 1; Note 2.) Together Notes 1 and 2 represent CDT's promise to pay Water & Sand principal of $3.2 million plus interest, which had reached a total of $1,462,826 on December 31, 2007, and which continues to accrue at three percent per month. (*See* Compl. ¶¶ 9–12, 12; Note 1; Note 2.) According to Water & Sand, CDT has failed to make payments on the notes despite Water & Sand's proper demands for payment. (*See* Compl. ¶ 6.)

Of particular interest at this stage of the proceedings, each demand note contains the following forum selection and choice of law clause:

> Moreover, CDT irrevocably consents to personal jurisdiction in the District of Columbia for purposes of any collection action, which may be necessary to insure payment of this note; and it further consents to having any collection action to be heard solely before the courts of the District of Columbia under Nevada law.

(Note 1 at ¶ 3; Note 2 at ¶ 4.)

Prior to the initiation of plaintiff's suit in this District, CDT filed two lawsuits in the Northern District of Texas—one against Water & Sand and one against Chester Nosal.[2] In the suit against Water & Sand, CDT pursued a usury action alleging that the interest charged in association with the loans exceeded the usury ceiling set by the Texas Finance Code. *See Capacitive Deionization Tech. Sys., Inc. v. Water & Sand Int'l Capital, Inc.* No. 3:08-cv-038-P, slip op. at 3 (N.D. Tex. Apr. 21, 2008). There, the court found that the same forum selection clause at issue in this case was enforceable. *See id.* at 6–11. Accordingly, the court granted Water & Sand's motion to dismiss that case. *See id.* at 2.

CDT's Northern District of Texas suit against Chester Nosal alleges that Mr. Nosal was a fiduciary of CDT who provided services to CDT in the roles of "principal outside counsel" and member of "the company's Advisory Board." *See Nosal* Am. Compl. (Dec. 5, 2007), ¶ 7. CDT claims that Mr. Nosal breached his fiduciary duty by colluding with Mr. Talley to execute the loan agreements. *See id.* ¶¶ 11–20. Further, according to CDT, Mr. Nosal fraudulently concealed information from the CDT board of directors, which permitted him to engage in impermissible self-dealing. *See id.* ¶¶ 15, 20–21. On April 21, 2008, the court denied Mr. Nosal's motion to dismiss and found that CDT had stated a claim. *See Capacitive Deionization Tech. Sys., Inc. v. Nosal*, No. 3:07-cv-1215-P, slip op. at 10–11 (N.D. Tex. Apr. 21, 2008). Reading the complaint in a light most favorable to CDT and taking its allegations as true, the court found that a question remained as to whether Mr. Nosal represented CDT at the time of the loan agreements. *See id.* at 11. Further, if Mr. Nosal owed CDT a duty at the time of the loan

---

[2] *See* Complaint, *Capacitive Deionization Tech. Sys., Inc. v. Water & Sand Capital Int'l, Inc.*, No. 3:08-cv-038-P. (N.D. Tex. filed Jan. 8, 2008); Complaint, *Capacitive Deionization Tech. Sys., Inc. v. Nosal*, No. 3:07-cv-1215-P (N.D. Tex. filed July 9, 2007) [hereinafter *Nosal*].

agreements, it was plausible that he breached that duty by concealing information "when he did not completely apprise the board of directors of details and material terms of the loans." *Id.* The Texas case against Mr. Nosal remains pending.

On January 16, 2008, Water & Sand filed suit in this Court alleging breach of contract. CDT now moves to dismiss for lack of personal jurisdiction and claims that the parties' forum selection clause is unenforceable. (*See* Mot. to Dismiss at 5–7.) Additionally, CDT asserts that dismissal is proper because of the pending Northern District of Texas litigation, which was filed before this lawsuit. (*See id.* at 7–8.) Further, in the event that the Court denies CDT's motion, CDT asks this Court to transfer venue to the Northern District of Texas pursuant to 18 U.S.C. § 1404(a) or, in the alternative, to stay proceedings here pending resolution of the Texas litigation. (*See id.* at 8–9.)

## II.     ANALYSIS

### A.     Personal Jurisdiction

When courts consider a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing a prima facie case that personal jurisdiction exists. *See Naegele v. Albers*, 355 F. Supp. 2d 129, 136 (D.D.C. 2005) (citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)). "A prima facie case in this context means that the plaintiff must present evidence sufficient to defeat a motion for judgment as a matter of law." *Id.* (citing *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1227 (D.C. Cir. 1984)). However, "this burden is 'only a minimal [one].'" *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 104 (D.D.C. 2002) (quoting *Abramson v. Wallace*, 706 F. Supp. 1, 2 (D.D.C. 1989)). In determining whether a basis for personal

jurisdiction exists, discrepancies in the record must be resolved in favor of the plaintiff. *See Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). Yet, a court need not treat all of plaintiff's allegations as true. *See Naegele*, 355 F. Supp. 2d at 136 (citing *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) (stating that courts should not accept bare allegations and conclusory statements)). Further, courts may rely upon matter outside the pleadings in determining jurisdictional facts. *See id.* (citing *Artista Records, Inc. v. Sakfield Holding Co. S.L.*, 314 F. Supp. 2d 27, 30 (D.D.C. 2004)).

     A court has personal jurisdiction over a defendant if the defendant is both subject to the District of Columbia's long-arm statute and the exercise of jurisdiction comports with the due process clause. *Crane*, 894 F.2d at 455–56; *see also* D.C. CODE § 13-423(a) (2007) (long-arm statute). The District of Columbia's "long-arm statute 'permits exercise of personal jurisdiction to the fullest extent permissible under the due process clause.'" *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 28 (D.D.C. 2006) (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 990–91 (D.C. 1981)). The constitutional due process test is typically met if the defendant has "minimum contacts" with the District of Columbia "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This analysis requires courts to determine whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court here." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).

     However, the usual due process analysis need not be done when a nonresident defendant contractually agrees to personal jurisdiction in a given state. *See Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989). Because personal

jurisdiction is a waivable right, courts do not offend due process when they enforce "freely negotiated" agreements to submit controversies for resolution within a particular jurisdiction provided that the agreements are not "unreasonable and unjust." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (holding that a forum selection clause should control absent a strong showing that it be set aside as unreasonable, unjust, or invalid); *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ."); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (same).

In this case, as discussed below in Part II.B. of this Opinion, the parties entered into an enforceable contractual agreement to this Court's personal jurisdiction. Because CDT has not made a strong showing that the agreement be set aside, this Court's exercise of personal jurisdiction over CDT is proper.

### B.     Forum Selection Clause Enforcement

The District of Columbia "has recognized the modern trend toward enforcing forum-selection clauses, noting that 'such clauses are [now] prima facie valid and [will] be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'" *Yazdani v. Access ATM*, 941 A.2d 429, 431 (D.C. 2008) (quoting *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010 (D.C. 2002)); *see M/S Bremen*, 407 U.S. at 10–12.

To demonstrate that a forum selection clause is unreasonable, a defendant "would have to show that (i) [the clause] was induced by fraud or overreaching, (ii) the contractually selected forum is so unfair and inconvenient as, for all practical purposes to deprive the plaintiff of a

remedy or of its day in court, or (iii) enforcement would contravene a strong public policy of the [forum] where the action is filed." *Yazdani*, 941 A.2d at 431 n.2 (citation omitted).

Like the Northern District of Texas court, this Court finds that the forum selection clause is enforceable—it is prima facie valid and not shown to be "unreasonable" under the circumstances.[3]

Although CDT certainly attacks the forum selection clause, it does not do so with the type of particularity that would sway this Court. *Compare 2215 Fifth Street Assocs. v. U Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 55 (D.D.C. 2001) (noting that claims of "fraud and overreaching must be specific to a forum selection in order to invalidate it"), *with* (Mot. to Dismiss at 7 (generally arguing that "[i]t would be 'unreasonable and unjust' to require the Defendant here to defend this case in the District of Columbia where the very clause at issue is rife with fraud, overreaching and fiduciary breach").) Mere conclusory allegations that a forum selection was induced by fraud and misrepresentations are insufficient to overcome the strong presumption in favor of enforcing forum selection clauses. *See L&L Constr. Assocs., Inc. v. Slattery Skanska, Inc.*, 2006 WL 1102814, at *4 (D.D.C. Mar. 31, 2006) (Lamberth, J.). And, while CDT somewhat dramatically alleges that the Texas litigation shows the type of overreaching that is "fraud in the extreme," (*see* Mot. to Dismiss at 7), this Court disagrees.

The Northern District of Texas court made several findings in support of enforcing the forum selection clause: (1) there was no evidence in the record supporting the allegation that Mr. Nosal failed to disclose a conflict of interest in the loan transactions; (2) the same forum

---

[3] The Court is aware of the absurdity that would result if the Northern District of Texas, holding that the forum selection clause was enforceable, dismissed the action there only to have this Court dismiss the current suit because it found the same clause unenforceable.

selection clause had appeared in several previous loan transactions between the two parties over the course of two or three years; and, (3) the simplicity of the one-page promissary notes tended to make it difficult to believe that the clause was the product of fraud and overreaching. *See Capacitive Deionization Tech. Sys., Inc. v. Water & Sand Int'l Capital, Inc.* No. 3:08-cv-038-P, slip op. at 9 (N.D. Tex. Apr. 21, 2008). Further, that court found that even if this District would be inconvenient or expensive for CDT, such factors were insufficient to render the clause unreasonable and thus unenforceable. *See id.* at 10 (citing *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. App'x 612, 617 (5th Cir. 2007)). Further, the court was in no position to rescue CDT from what the court considered to be an unfavorable business deal. *See id.* Having assessed the records in the two Texas cases and that of the current suit, this Court agrees with the Texas court, and determines that nothing in the record renders the parties' forum selection clause unreasonable.[4]

## C. Effect of Pending Northern District of Texas Litigation on Motion to Dismiss

CDT contends that dismissal is proper based on the pending litigation in the Northern District of Texas. However, even if the Northern District of Texas suit against Water & Sand had not been dismissed, dismissal here would still be inappropriate. This Court cannot permit parties to evade the effects of enforceable forum selection clauses by rushing to their desired venue, filing suit, and then asking other courts to dismiss subsequently actions because those

---

[4] The Court notes that the issues of which party drafted the forum selection clause and of the extent to which CDT was aware of its existence and implications are not crucial to its analysis. In light of the circumstances in this case and the fact that this District is not a "gravely inconvenient or unfair forum for a Texas company," *see Capacitive Deionization Tech. Sys.*, No. 3:08-cv-038-P, slip op. at 10, these issues are of little consequence. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594–597 (1991) (upholding forum selection clause in a non-negotiated boiler-plate contract where many potential plaintiffs may not even have been aware of the clause's existence).

8

suits make allegations that are properly considered compulsory counterclaims. *See Publicis Commc'n v. True North Commc'n*s, 132 F.3d 363, 366 (7th Cir. 1997) (Easterbrook, J.) (indicating that a forum selection clause represents a promise not to invoke the defense of claim preclusion when suit is filed in the contractually agreed upon venue).[5]

### D. Venue Transfer

Under section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts are vested with discretion "to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness." *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 176–77 (D.D.C. 2007) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988)); *see In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983) (defining courts' discretion as *broad*). When considering a defendant's motion to transfer venue, "a forum-selection clause is best understood as a potential defendant's *ex ante* agreement to waive venue objections to a particular forum." *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000) (citing *Northwestern Int'l Ins. Co. v. Donovan*, 916 F.2d 372, 375–76 (7th Cir. 1990) (Posner, J.));[6] *Gipson v. Wells Fargo & Co.*,

---

[5] As CDT argues, it is generally true that "[w]hen two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (citations omitted). Assuming that the same case were pending in the Northern District of Texas—which is not likely the current scenario given that only CDT's Texas suit against Mr. Nosal remains—the Court would be reluctant to give effect to this traditional concept of comity. Such deference would surely hinder Water & Sand's reliance on the parties' enforceable contractual agreement to bring any dispute in this District.

[6] Judge Posner suggested that the only reason that could justify a change of venue under section 1404(a) would be that the forum selection clause at issue had an adverse effect on third

2008 WL 2501149, at *7 (D.D.C. June 24, 2008) (noting that a forum selection clause is a clear indication of venue preference and in some sense an agreement to waive venue objections). Further, "[a] party can seek to rescind a forum selection clause . . . but if the attempt fails and the clause is held to be valid, then section 1404(a) may not be used to make an end run around it." *Donovan*, 916 F.2d at 378. While, the forum selection clause is a significant factor in a court's venue transfer analysis, it is not the only factor:

> [A] district court should also consider issues such as "convenience," "the fairness of the transfer in light of the forum-selection clause," "the parties' relative bargaining power," and "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the interest of justice."

*Worldwide Network Servs., LLC v. DynCorp Int'l*, 496 F. Supp. 2d 59, 63–64 (D.D.C. 2007) (quoting *Stewart Org.*, 487 U.S. at 29–30).

In this case, the parties' forum selection clause weighs strongly against transfer. *See Gipson*, 2008 WL 2501149, at *7–8 (enforcing a forum selection clause that weighed strongly in favor of transfer); *Worldwide Network Servs.*, 496 F. Supp. 2d at 62–63 (D.D.C. 2007) (stating that "generally, forum selection clauses are granted significant weight in venue transfer motions"); *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 48 (D.D.C. 2005) (Lamberth, J.) (same). Any inconvenience posed by adjudication in this District should have been foreseen by CDT when it signed the agreement to litigate here.

The combination of other factors in this Court's venue transfer analysis are insufficient to

---

parties. *See Donovan*, 916 F.2d at 376. He emphasized that "one who has agreed to be sued in the forum selected by the plaintiff has thereby agreed not to seek to retract his agreement by asking for a change of venue on the basis of costs or inconvenience to himself; such an effort would violate the duty of good faith that modern law reads into contractual undertakings." *Id.* at 378 (citations omitted).

outweigh the forum selection clause's effect.[7] In short, the Court finds that (1) convenience of the parties and witnesses does not weigh strongly against venue in this District; (2) transfer would be unfair in light of the forum selection clause; (3) the parties' relative bargaining power was not particularly unequal;[8] (4) permitting suit here does not cause great harm to public interest factors affecting the Court's administration of its docket; and, (5) the interest of justice is served by this Court retaining jurisdiction.

### E.     Stay

The Court will deny CDT's request that this case be stayed. In light of all the aforementioned considerations, this Court is unwilling to delay proceedings in this District until results from the remaining Texas case are available. Allowing such delay would only serve to detract from Water & Sand's well-established right to pursue claims in this District—the venue where both parties agreed to settle any disputes.

### F.     Motion for Leave to File Supplemental Affidavit

Water & Sand asks this Court for leave to file a supplemental affidavit of CDT chief financial officer Phil Marshall dated March 11, 2008.[9] CDT filed two opposition briefs [11, 12] to the motion.

---

[7] As in its motion to dismiss analysis, the Court again notes the bizarre result that would occur if the Court were to order transfer of this matter to the Northern District of Texas given that the Northern District of Texas dismissed CDT's suit against Water & Sand because it had found that this District was the proper venue for the parties to settle their disputes.

[8] CDT's board of directors is full of individuals with extensive business experience. (*See* SEC Form 10-KSB/A (Apr. 14, 2006), Ex. 4 to Opp. to Mot. to Dismiss at 4–5.)

[9] Water & Sand submits the affidavit in support of its assertion that CDT was aware of the forum selection clause and approved it.

The Court, while noting that it had no occasion to rely on this affidavit in its decision to deny CDT's motion to dismiss, will grant Water & Sand's motion for leave to file. CDT makes the Court aware of inconsistencies between this affidavit and other sworn statements made by Mr. Marshall. (*See, e.g.,* Marshall Decl. (Apr. 1, 2008), Ex. 1 to Opp. [12] at ¶ 2 ("I am now convinced that a number of statements that I had made in the March 11, 2008 affidavit may have been technically inaccurate and perhaps misleading.").) However, the Court is confident that CDT will not be prejudiced by inclusion of the March 11 affidavit as part of the record in this case. The inconsistencies of which CDT makes the Court aware may call into question the credibility of Mr. Marshall. Yet, at this early stage of the proceedings, assessing the credibility of witnesses remains an issue for another day. When that day comes, the Court has no doubt that the finder of fact will be able to make credibility determinations based on a fully developed record.

### III.   CONCLUSION

For the reasons set forth above, CDT's motion to dismiss Water & Sand's complaint shall be DENIED. Additionally, this Court rejects CDT's request to transfer this case to the Northern District of Texas or, in the alternative, to stay the case pending resolution of litigation in the Northern District of Texas.

Water & Sand's motion for leave to file supplemental affidavit will be GRANTED.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth on July 7, 2008.