IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAPACITIVE DEIONIZATION TECHNOLOGY SYSTEMS, INC. d/b/a CDT SYSTEMS, INC. | § § § § § § § § § § § § | |
| Plaintiff, | | Civil Action No. 3:08-cv-00038-N |
| vs. | | |
| WATER & SAND INTERNATIONAL CAPITAL, INC. | | |
| Defendant. | | |

## AFFIDAVIT OF PHILLIP MARSHALL

STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned authority on this day personally appeared Phillip Marshall, known to me to be the person whose name is subscribed hereto and under oath did depose and say.

1. "My name is Phillip Marshall. I am over the age twenty-one years, have never been convicted of a felony, am competent to testify to the matters in this Affidavit and have personal knowledge of the facts stated herein except where matters are stated upon belief. I am a Certified Public Accountant licensed in the State of Texas and have practiced as a public auditor for over 30 years. I presently am Chief Financial Officer for a publicly traded company.

2. CDT was an audit client for 3 years when I was with the auditing firm of Jackson Rhodes. In 2003 I joined CDT as its Chief Financial Officer. From July 2003 through approximately January 10, 2007 I was employed by Capacitive Deionization Technology

AFFIDAVIT OF PHILLIP MARSHALL – Page 1

Systems, Inc. ("CDT") as its Chief Financial Officer ("CFO"). In that capacity, I had frequent contact with members of the Board of Directors, the Chief Executive Officer (who during most of which time was Dallas Talley) and his successor, John Davies.

3. During my employment with CDT, the company was constantly seeking financing to permit it to develop and market its patented, licensed technology. We were never able to convince a lender to lend us sufficient monies to constitute long term financing. As a result, we were constantly in need of operating capital and had to secure numerous loans of a short term nature and of considerably smaller amounts than the $20 million or so that the company needed.

4. During my tenure, the company executed well over 100 promissory notes with different short term lenders. Certain of the promissory notes executed by the company contained venue clauses and choice of law provisions, one example of which was a note executed by the company in favor of a lender, ABB, calling for exclusive venue and jurisdiction in New York and for the application of New York law.

5. I knew Chester Nosal in his capacity as an advisory director of CDT. Mr. Nosal was very helpful to the company in lending his business judgment and expertise on various questions that affected the company. In addition, Mr. Nosal, at the request of Dallas Talley originally, caused a company he controlled, W&S, to lend the company money for short term purposes.

6. Attached to this Affidavit are two promissory notes signed by CDT's CEO, Dallas Talley and countersigned by me. These notes were intended to be short term bridge financing to tide us over and assist the company with its operating capital requirement until long term financing could be obtained. Thus, the interest rate was relatively low for a 12 month period, as

AFFIDAVIT OF PHILLIP MARSHALL – Page 2

all parties in the company concerned with this matter were of the view that we could obtain long term financing before the interest rate in the two attached notes accelerated to a much higher rate.

7. I personally had at least one telephone conversation with a member of the Board, Tom Friezen, head of CDT's audit committee in which I discussed the potentially expensive financing in the event the loans were not repaid within the first 12 months. Mr. Friezen's reaction was to tell me that he understood that this financing could be quite expensive but the company must have the financing so "Let's get it signed up" or words to that effect. In fact John Davies, the CEO, was most anxious that the November 2006 note get executed for he said to me that he needed the money.

8. With respect to most of the W&S notes, I prepared them and cosigned them on behalf of CDT and understood their terms including their choice of law and venue for dispute resolution as did Dallas Talley and the Board. It is my understanding that in 2004, the Board members signed written consents to reflect their approval of the W&S note and its terms, a copy of which was sent to Mr. Nosal.

9. I knew and understood, as the company's CFO, the terms of each of the notes signed by the company in favor of Water & Sand International Capital, Inc.. I believe that Dallas Talley communicated with each of the members of the board concerning those financings and at no time did anyone on the board object."

Further affiant saith not.

_____
Phillip Marshall

AFFIDAVIT OF PHILLIP MARSHALL – Page 3

SUBSCRIBED AND SWORN TO BEFORE ME the undersigned notary public on this the 11th day of March, 2008, to certify which witness my hand and official seal.

_____
Notary Public in and for the
State of Texas

My commission expires:

Feb. 14, 2010

[Notary Seal: LATIFA ANAKAR, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 02-14-2010]

AFFIDAVIT OF PHILLIP MARSHALL – Page 4