**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Water & Sand International Capital, Ltd. | ) ) ) | |
| v. | ) ) | C.A. No. 1:08-CV-88-RCL |
| Capacitive Deionization Technology Systems, Inc. | ) ) ) | |
| _____ | ) | |

**MOTION FOR PARTIAL SUMMARY JUDGMENT BY
PLAINTIFF WATER & SAND INTERNATIONAL CAPITAL, LTD.**

Plaintiff Water & Sand International Capital, Ltd. (W&S) moves for partial summary judgment (1) ruling that the following facts shall be deemed established: Capacitive Deionization Technology Systems, Inc. (CDT) borrowed $3.2 million from W&S as of November 2, 2006 and has not repaid it, and (2) exercising the Court's equitable authority to correct the scrivener's error in the promissory notes at issue.

This motion is supported by the memorandum and statement of undisputed facts filed in opposition to the motion of CDT for summary judgment, a copy of which is filed with this motion also.

Respectfully submitted,
/s/ David U. Fierst
Glenn A. Mitchell (#052233)
gamitchell@steinmitchell.com
David U. Fierst (#912899)
dfierst@steinmitchell.com
Stein, Mitchell & Mezines, LLP
1100 Connecticut Avenue
Suite 1100
Washington D.C. 20036
Tel:  202-737-7777
Fax: 202-296-8312

August 7, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Water & Sand International Capital,    )
Ltd.                                   )
                                       )
v.                                     )          C.A. No. 1:08-CV-88-RCL
                                       )
Capacitive Deionization Technology Systems, )
Inc.                                   )
_____)

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Water & Sand International Capital, Ltd. (W&S) hereby opposes

the motion of Capacitive Deionization Technology Systems, Inc. (CDT) for

summary judgment.  W&S further seeks partial summary judgment (1) ruling that

CDT borrowed $3.2 million as of November 2, 2006 and has not repaid it, and (2)

exercising the Court's equitable authority to correct the scrivener's error in the

promissory notes at issue.

**I.      INTRODUCTION**

CDT admits that it borrowed $3.2 million, and that it has not repaid the

loan.  Its then Chairman and Chief Financial Officer signed notes attesting to the

loans and agreeing to repay them.

The money was borrowed from plaintiff Water & Sand International

Capital, Ltd., a fact that was well known to CDT, and is not disputed.

The notes by which CDT promised to repay the $3.2 million, however, had

an error.  Instead of a promise to repay Water & Sand International Capital, Ltd.,

the notes included a promise to pay Water & Sand International Capital, Inc.

CDT's motion for summary judgment is based on the argument that this

1

insignificant error should relieve it of the obligation to repay a valid, undisputed debt of $3.2 million plus accrued interest.

CDT fails to cite any precedent that would lead to the unjust result it seeks.  On the contrary, there is clear precedent that a court has the inherent authority to correct a scrivener's error.  The Court should do so at the outset of this case so that the parties' clear intent can be effectuated.

W&S therefore seeks an order (1) denying CDT's motion for summary judgment and (2) granting partial summary judgment in W&S's favor finding that CDT borrowed and has not repaid $3.2 million, and correcting the scrivener's error in the notes at issue so that the notes will be payable to Water & Sand International Capital, Ltd.

## FACTS

The following facts set forth in CDT's motion are disputed:

5. The second sentence is garbled and incomprehensible.

The other facts cited in CDT's motion are not disputed.  However, as we will show herein, they do not lead to the relief CDT seeks.  Primarily, the motion should be denied because it is undisputed that the parties intended the promissory notes at issue to require repayment to the plaintiff Water & Sand International Capital, Ltd. instead of to the non-existent entity Water & Sand International Capital, Inc.

The following facts are material to W&S's cross-motion for summary judgment and are undisputed:

1.  Chester Nosal is the sole shareholder of Water & Sand International Capital, Ltd.  Nosal Dec. ¶ 2.

2.  Water & Sand International Capital, Ltd. is incorporated in Delaware, and there is no record that Water & Sand International Capital, Inc. exists as an incorporated entity.  Nosal Dec. ¶ 3; Davies Dec. ¶12 and Exhibit C.

3.  Water & Sand International Capital, Ltd. has offices at Cupecoy Beach Club, Suite 201, Lowlands, St. Maarten, Netherlands Antilles.  Nosal Dec. ¶ 4.

4.  Water & Sand International Capital, Ltd. has a banking relationship with RBTT Bank St. Maarten, NV, Front Street, Emmaplein, Philipsburg, St. Maarten, Netherlands Antilles.  Nosal Dec. ¶ 5.

5.  The attorney for Water & Sand International Capital, Ltd. is Chester Nosal.  Nosal Dec. ¶ 6.

6.  Water & Sand International Capital, Ltd. made a series of loans to CDT.  Nosal Dec. ¶ 7; Second Amended Complaint, ¶¶4 and 8, *CDT v. Nosal*, 3-07CV1215-P (N.D.Tex. 5/20/2008).

7.  As of November 2, 2006 the loans from Water & Sand International Capital, Ltd. to CDT, including accrued interest, totaled $3,200,000.  Nosal Dec. ¶ 8.

8.  The note dated November 1, 2006, attached to the Complaint as Exhibit 1, was executed by Dallas Talley, chairman of CDT, and Phil Marshall, Chief Financial Officer of CDT.

9.  The note dated November 2, 2006, attached to the Complaint as Exhibit 2, was executed by Dallas Talley, chairman of CDT, and Phil Marshall, Chief Financial Officer of CDT.

10.  As of November 1, 2006, CDT intended to repay the debt evidenced by the note dated November 1, 2006.

11.  As of November 2, 2006, CDT intended to repay the debt evidenced by the note dated November 2, 2006.

12.  There is no Delaware Corporation named Water & Sand International Capital, Inc.  Nosal Dec. ¶ 3; Davies Dec. ¶12

13.  Chester Nosal does not represent an entity named Water & Sand International Capital, Inc.  Nosal Dec. ¶ 6.

14.  There is no entity named Water & Sand International Capital, Inc. with an office at Cupecoy Beach Club, Suite 201, Lowlands, St. Maarten, Netherlands Antilles.  Nosal Dec. ¶ 10.

15.  The parties are unaware of any entity named Water & Sand International Capital, Inc. with a banking relationship with RBTT Bank St. Maartin, NV, Front Street, Emmaplein, Philipsburg, St. Maarten, Netherlands Antilles.  Nosal Dec. ¶ 11.

16.  CDT admitted in the Second Amended Complaint filed by CDT in Texas that it borrowed millions of dollars from a company owned by Chester Nosal: Nosal "represented his own company Water & Sand International Capital in arranging a series of loans to CDT totaling in the seven figures."  Second

Amended Complaint, Para. 4, *CDT v. Nosal*, 3-07CV1215-P (N.D.Tex. 5/20/2008).

17.  CDT admitted that: "To date Nosal has advanced the company approximately $2.2 million, with the present outstanding principal and interest balance totaling over $5 million." Second Amended Complaint, Para. 8, *CDT v. Nosal*, 3-07CV1215-P (N.D.Tex. 5/20/2008).

18.  CDT has not repaid the loans evidenced by the two notes at issue. Nosal Dec. ¶ 9.

## ARGUMENT

### A.  Scrivener's Error

CDT's motion for summary judgment should be denied and W&S's cross-motion granted for the same reason.  CDT's argument is premised on allowing it to evade its obligation to repay multi-million dollar loans that it admits were made to it, solely because the promissory notes misstated the creditor's name.  This was an error, and it should be corrected.  Courts have the equitable authority to correct a scrivener's error in a contract.

The basic rule is that where the parties reach agreement, but as a result of an error the written contract fails to reflect the terms of the agreement, a court should modify the contract to reflect the parties' agreement.

The rule providing for the equitable correction of scriveners' errors is widely accepted.  In Nevada (the notes at issue provide for the application of Nevada law) there are few cases discussing this.  The Nevada Supreme Court

discussed the issue in *Realty Holdings, Inc. v. Nevada Equities, Inc.*, 633 P.2d

1222, 1223 (Nev. 1981).  The court explained briefly the contours of the doctrine:

> It cannot be questioned at this late date that a court with equity
> powers … may reform a written instrument where it appears that
> there has been fraud, accident or mistake which has brought about
> a writing not truly representing the actual agreement of the parties.

Other courts, including courts in the District of Columbia, have explained

the doctrine in more detail.  The court in *Cafritz v. Cafritz*, 347 A.2d 267, 269

(D.C. 1975), explained that "reformation is appropriate where a mistake is made

in the drafting of an instrument so that the written contract fails to express the

true agreement between the parties."  This language was quoted with approval

in *Air Line Pilots Association v. Shuttle, Inc.*, 55 F.Supp.2d 47, 52 (D.D.C. 1999)

(Friedman, J.). [1]

An unintended variance between the written contract and the actual

agreement of the parties is a subcategory of mutual mistake.  Courts in such

cases should reform the contract to reflect what the parties actually intended.

*Sikora v. Vanderploeg*, 212 S.W.2d 277, 287-88 (Tenn.App. 2006).  The

Supreme Court of Virginia explained that a scrivener's error presents an

exception to the general rule that courts should not reform contracts, because

---

[1]    CDT has disputed whether Nevada law should apply.  District of Columbia
law recognizes the equitable correction of scrivener's errors, as shown above.
Texas also recognizes the equitable reformation of contract to correct drafting
errors. *Tribble & Stephens Co. v. RGM Constructors, L.P.,* 154 S.W.3d 639, 659
(Tex.App.2004) (court can "correct a mutual mistake made in preparing a written
instrument so that the written contract accurately reflects the original agreement
of the parties").  Whichever jurisdiction is chosen as governing, the outcome as
to this issue will be the same.

such errors are difficult to prevent and no useful purpose is served by enforcing a mistaken term. *Westgate at Williamsburg Condominium Association v. Philip Richardson Co.*, 621 S.E.2d 114, 118 (Va. 2005), citing *S.T.S. Transport Service Inc. v. Volvo White Truck Corp.*, 766 F.2d 1089, 1093 (7th Cir. 1985).

Courts have applied the scrivener's error doctrine to cases involving misnomers of a party to a contract. *Bort v. Parker*, 42 P.3d 980 (Wash. App. 2002) (although the contract referred to Louie Bort Construction the parties intended it to be Louie Bort Company). Using a somewhat different analysis, the court in *Par 3, Inc. v. Livingston*, 686 N.W.2d 369 (Neb. 2004), ruled that although the contract named Castle Brook as one of the parties, the parties really intended it to be Castle Development, Inc., and the contract would be enforced as though Castle Development, Inc. were the named party. See also *American States Ins. Co. v. First Financial Ins. Co.*, 2007 WL 4615503, 4 (W.D. Wash. 2007) (The court corrected a contract that erroneously identified a partnership instead of a corporation, stating "A party seeking correction only has to show that the parties agreed to accomplish a certain objective and that the instrument is insufficient to execute their intention").

Significantly, the question of fault does not arise in cases applying the scrivener's error doctrine. *In re Schick*, 232 B.R. 589, 598 (Bkrtcy, S.D.N.Y. 1999). The court there ruled that a scrivener's error ordinarily provides a basis for reformation even if only one party is at fault. The fact that a party may have acted negligently does not bar relief. It quoted *Tokio Marine & Fire Ins. Co. v. National Union fire Ins. Co.*, 18 F.Supp. 720, 723 (S.D.N.Y. 1937), *aff'd*, 91 F.2d

7

964 (2d Cir. 1937), as holding that "questions of negligence play almost no part in suits for reformation."  As explained in *Sikora*, if a party were denied relief because he was negligent or inattentive or failed to read the document, the remedy would almost never be available to correct errors.  212 S.W.2d at 290. Only in "extreme cases" where a party's fault constitutes a breach of good faith and fair dealing can it bar reformation.  212 S.W.2d at 290.

Nor does it matter which party supplied the scrivener, or even if one party drafted the faulty document itself.[2]  *Schick*, 232 B.R. at 598 ("such mistake of the scrivener, *or of either party, no matter how it occurred*, may be corrected") (emphasis in original).  See also *Sikora*, 212 S.W. 2d at 290 ("This is true even where the party seeking reformation is the one who drafted the contract").

In this instance, there is no genuine dispute as to the terms of the parties' intended agreement.  CDT borrowed $3.2 million, including accrued interest as of November 1 and 2, 2006.  CDT was obligated to repay those loans and intended to do so, and it executed two notes evidencing that intent and obligation.

The error arises in the identification of who was to be repaid.  There is no dispute that although the contract refers to Water & Sand International Capital, Inc., the parties intended repayment to be made to Water & Sand International Capital, Ltd.  That undisputed intent is evident from the following facts:

1. The names are virtually identical.

---

[2]    In the briefing on CDT's previous motion to dismiss, the parties differed over who was responsible for drafting the notes at issue.  That dispute is not material to the present cross motions for summary judgment because it does not matter who supplied the scrivener.  Reformation is appropriate even if one of the parties drafted the contract itself.  *Sikora*, 212 S.W. 2d at 290 n. 16, citing 27 Williston on Contracts, §70:93 at 499.

2.  There is an entity named Water & Sand International Capital, Ltd., but there is no known entity named Water & Sand International Capital, Inc.

3.  The note specifies payment will be made to an entity identified as having offices at Cupecoy Beach Club, Suite 201, Lowlands, St. Maartin, Netherlands Antilles.  Water & Sand International Capital, Ltd. has its offices at Cupecoy Beach Club, Suite 201, Lowlands, St. Maartin, Netherlands Antilles. Water & Sand International Capital, Inc. does not have offices there.

4.  The note specifies payment will be made at RBTT Bank St. Maartin, NV, Front Street, Emmaplein, Philipsburg, St. Maartin, Netherlands Antilles. Water & Sand International Capital, Ltd. has a banking relationship at RBTT Bank St. Maartin, NV, Front Street, Emmaplein, Philipsburg, St. Maartin, Netherlands Antilles.  There is no reason to believe that the non-existent Water & Sand International Capital, Inc. has a banking relationship there.

5.  The note specifies that the attorney for the payee is Chester Nosal. The attorney for Water & Sand International Capital, Ltd. is Chester Nosal.  Mr. Nosal does not represent any entity named Water & Sand International Capital, Inc.

6.  According to CDT's 2005 form 10KSB/A (Exhibit A to the declaration of John Davies, submitted by CDT), CDT borrowed $3 million from a company affiliated with Chester Nosal.  Mr. Nosal owns Water & Sand International Capital, Ltd.; he has no affiliation with a company named Water & Sand International Capital, Inc.

7. According to CDT's September 30, 2006 form 10QSB (Exhibit A to the declaration of John Davies, submitted by CDT), CDT owed over $3 million as of July 2006 to a company affiliated with Chester Nosal.  Mr. Nosal owns Water & Sand International Capital, Ltd.; he has no affiliation with a company named Water & Sand International Capital, Inc.

8. According to Exhibit 99 that CDT filed with the Securities & Exchange Commission on November 19, 2004 (Exhibit A to the declaration of John Davies, submitted by CDT), CDT borrowed $1 million from a company located in the Netherlands Antilles.  Water & Sand International Capital, Ltd. is located there; Water & Sand International Capital, Inc. is not.

9. CDT admits in the Second Amended complaint that it filed in Texas that it borrowed sums variously referred to as seven figure loans or $2.2 million, not including interest, from a lender referred to as either Water & Sand International Capital or Chester Nosal.

It is also significant that CDT has never acted as though the name on the notes had any particular importance.  In CDT's pending Texas complaint against Nosal, for example, CDT alleges: "Nosal offered to provide the company with operating funds by periodic loans evidenced by promissory notes.  These lending activities began in November 2004, and resulted in a number of advances, some of which were eventually renewed with prior and accrued interest rolled into a new note.  Nosal is believed to have personally advanced the money but had the promissory notes made payable to an entity identified by him as Water & Sand International Capital, Inc. (Hereinafter 'W&S').  The W&S entity is believed to be

nothing more than an assumed name or a post office drop box for Nosal."
Second Amended Complaint, ¶ 6, *CDT v. Nosal*, 3-07CV1215-P (N.D.Tex.
5/20/2008).

There is other evidence that the name of the payee is of no importance to
CDT.  A letter from Phil Marshall, CFO of CDT, relating to a million dollar loan is
addressed to "Chet Nosal, Water & Sand International."  That is, the letter does
not specify either Ltd. or Inc.  Moreover, the letter, which is addressed to Chet
Nosal, refers to "our note payable to you."  Nosal Dec. Exhibit 1.  Internal CDT
records show notes payable to "Sand & Water," which is a reversal of the
payee's real name, Water & Sand, and completely ignores whether the name is
Ltd. or Inc.  Nosal Dec. Exhibits 2 and 3.

Finally, there is no rational explanation why the parties would agree to
notes that call for repayment of a multi-million dollar debt to a non-existent entity.
Clearly, that was no more than an unintended error, and this Court should correct
it.

In sum, the parties agreed that CDT would repay the multi-million dollar
loans to it, but the notes misstate the name of the lender.  The Court should
exercise its equitable authority to correct the mistake so that the agreement
between the parties can be enforced in accordance with the parties' intent.

**B.  Uniform Commercial Code**

The Court can reach the same result pursuant to the Uniform Commercial
Code, codified at Nev. Rev. Stat. §104.3110(1), which provides that a promissory
note "is payable to the person intended by the signer even if that person is

identified in the instrument by a name or other identification that is not that of the intended person." See, e.g., *Electrical Distributors, Inc. v. SFR, Inc.*, 166 F.3d 1074, 1087 (10th Cir.1999); 6B Lawrence's Anderson on the Uniform Commercial Code § 3-110:6 [Rev] (3d ed.) ("An instrument is payable to the person intended by the signer even where the payee is identified by a name other than his or her own name"). For all the reasons stated above, there is no genuine dispute that the signer of the notes intended to pay Water & Sand International Capital, Ltd., notwithstanding that the note has a slightly different name.

### C.  CDT Borrowed and Has Not Repaid $3.2 Million

As shown above, there is no dispute that CDT borrowed millions of dollars from Water & Sand International Capital, Ltd. CDT has admitted that in several places. The amount of the loans ($3.2 million) is shown on the face of the two promissory notes executed by CDT's Chairman and Chief Financial Officer, and it is attested to by Chester Nosal. There is no dispute as to this. Nor is there any dispute that the debt remains unpaid.

Because there is no genuine dispute as to the amount of the loans, the Court should grant summary judgment on this issue.

### CONCLUSION

For the reasons stated herein, plaintiff Water & Sand International Capital, Ltd. respectfully requests that the Court:

1.  Deny CDT's motion for summary judgment, and

2.  Grant W&S's motion for partial summary judgment by (1) ruling that CDT borrowed $3.2 million as of November 2, 2006 and has not repaid it, and (2)

exercising the Court's equitable authority to correct the scrivener's error in

naming Water & Sand International Capital, Inc. instead of Water & Sand

International Capital, Ltd. in the promissory notes at issue.

Respectfully submitted,

/s/ David U. Fierst
Glenn A. Mitchell (#052233)
gamitchell@steinmitchell.com
David U. Fierst (#912899)
dfierst@steinmitchell.com
Stein, Mitchell & Mezines, LLP
1100 Connecticut Avenue
Suite 1100
Washington D.C. 20036
Tel:  202-737-7777
Fax: 202-296-8312

August 8, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Water & Sand International Capital,　)
Ltd.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　　C.A. No. 1:08-CV-88-RCL
　　　　　　　　　　　　　　　　　)
Capacitive Deionization Technology Systems,　)
Inc.　　　　　　　　　　　　　　　)
_____　)

### DECLARATION OF CHESTER NOSAL

I, Chester Nosal Esq., declare under penalty of perjury as follows:

1.　I have personal knowledge of the matters stated herein, and I am competent to testify. I am a member in good standing of the Bar of the District of Columbia.

2.　I am the sole shareholder of Water & Sand International Capital, Ltd.

3.　Water & Sand International Capital, Ltd. is incorporated in Delaware. I am aware of no entity named Water & Sand International Capital, Inc.

4.　Water & Sand International Capital, Ltd. has offices at Cupecoy Beach Club, Suite 201, Lowlands, St. Maartin, Netherlands Antilles.

5.　Water & Sand International Capital, Ltd. has a banking relationship with RBTT Bank St. Maartin, NV, Front Street, Emmaplein, Philipsburg, St. Maartin, Netherlands Antilles.

6.　I am, and at all relevant times have been, the attorney for Water & Sand International Capital, Ltd. I do not represent an entity named Water & Sand International Capital, Inc.

7.　Water & Sand International Capital, Ltd. made a series of loans to CDT.

1

8. As of November 2, 2006 the loans from Water & Sand International Capital, Ltd. to CDT, including accrued interest, totaled $3,200,000. Interest has continued to accrue since then.

9. CDT has not repaid the loans referenced in paragraph 8 of this Declaration. Nor has it paid interest on those loans.

10. To the best of my knowledge, there is no entity named Water & Sand International Capital, Inc. with an office at Cupecoy Beach Club, Suite 201, Lowlands, St. Maartin, Netherlands Antilles.

11. I am unaware of any entity named Water & Sand International Capital, Inc. with a banking relationship with RBTT Bank St. Maartin, NV, Front Street, Emmaplein, Philipsburg, St. Maartin, Netherlands Antilles.

12. Exhibit 1 to this Declaration is a true and accurate copy of a letter addressed to me from Phil Marshall, CFO of CDT, dated January 10,2005.

13. Exhibits 2 and 3 to this Declaration are true and accurate copies of CDT's Notes Payable records that were sent to me by Phil Marshall.

I declare under penalty of perjury the foregoing is true and correct. Executed on August **5**, 2008.

Chester Nosal

2

EXHIBIT 1

 **CDT SYSTEMS, INC.**                    www.cdtwater.com

13636 Neutron Road, Dallas, Texas 75244 * Tel (972) 934-1586 * Fax (972) 934-1592

January 10, 2005

Mr. Chet Nosal
Water & Sand International

Dear Chet:

Our auditors, Weaver and Tidwell, LLP, 12221 Merit Drive, Suite 1400, Dallas, Texas 75251, are making an examination of our financial statements. Please furnish them the following information with respect to our note payable to you as of December 31, 2004.

Balance due                    $1,000,000

Interest rate: 1.5% per month

Due:  November 30, 2005

Collateral:  Convertible to 5,000,000 shares of CDT common stock  *plus interest*

Your prompt attention to this request will be appreciated. Please fax your response to 972-702-8321. If your response is made directly on this request letter, please date and sign your response.

Yours very truly,

*[signature]*

Phil Marshall, CFO

**CONFIRMATION:**

The information provided above or in a separate attachment is complete and accurate as of the date indicated.

Date:  *14 Jan 2005*                    By:  *[signature]*

**EXHIBIT 2**

## NOTES PAYABLE – NOSAL RECALCULATED

| | Made | Maturity | Rate | Amount | 10/31/05 Accrued Interest | Convertible Shares | Exercise Price | 10/31/05 Present Value | |
|---|---|---|---|---|---|---|---|---|---|
| Nosal | 12/31/02 | 6/30/04 | 1%/mo | 100,000 | | | $ 0.25 | | |
| Nosal | 12/31/02 | 6/30/04 | 1%/mo | 100,000 | | | $ 0.25 | | |
| Sand & Water | 11/10/04 | 11/30/05 | 1.5%/mo | 1,000,000 | 183,686 | 5,918,431 | $ 0.20 | | |
| Sand & Water | 2/25/05 | 2/28/06 | 1.5%/mo | 400,000 | 52,024 | 2,260,121 | $ 0.20 | 452,024 | 2/25/05 |
| Sand & Water | 8/8/05 | 11/30/05 | 1.5%/mo | 200,000 | 8,457 | 1,042,284 | $ 0.20 | 208,457 | 8/8/05 |
| Sand & Water | 10/19/05 | 4/30/06 | 1.5%/mo | 200,000 | 1,088 | 1,005,438 | $ 0.20 | 201,088 | 10/19/05 |
| | | | | | 245,255 | 10,226,274 | | | |

Dates on 1,000,000:

| | Made | Maturity | | Amount | | | | 10/31/05 Present Value | |
|---|---|---|---|---|---|---|---|---|---|
| | 11/17/04 | 11/30/05 | | 400,000 | | | | 475,103 | 11/17/04 |
| | 11/19/04 | 11/30/05 | | 400,000 | | | | 474,635 | 11/19/04 |
| | 12/17/04 | 11/30/05 | | 200,000 | | | | 233,948 | 12/17/04 |
| | | | | 1,000,000 | | | | 1,183,686 | |

BALANCE DUE:  PRINCIPAL     1,800,000

                      INTEREST       245,255

                      TOTAL        2,045,255




**EXHIBIT 3**

## NOTES PAYABLE E – NOISAL
### RECACULATED

| | Made | Maturity | Rate | Default Rate | Amount | @ 1.5%/mo 9/30/06 Accrued Interest | @ 3%/mo 9/30/06 Accrued Interest | @ 1.5%/mo Convertible 3/31/06 Shares | Exercise Price | @ 3%/mo Convertible 3/31/07 Shares | Exercise Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sand & Water | 11/1/04 | 11/30/05 | 1.5%/mo | 3%/mo | 1,080,000 | 399,683 | 577,623 | 6,908,416 | 0.20 | 7,888,114 | 0.20 |
| Sand & Water | 2/25/05 | 2/28/06 | 1.5%/mo | 3%/mo | 400,000 | 131,939 | 192,211 | 2,664,696 | $ 0.20 | 2,961,057 | $ 0.20 |
| Sand & Water | 8/8/05 | 1/5/2005 | 1.5%/mo | 3%/mo | 280,000 | 45,772 | 68,995 | 1,228,859 | $ 0.20 | 1,304,975 | $ 0.20 |
| Sand & Water | 10/19/05 | 4/30/06 | 1.5%/mo | 3%/mo | 200,000 | 37,280 | 55,658 | 1,186,802 | $ 0.20 | 1,778,249 | $ 0.20 |
| Sand & Water | 11/17/05 | 4/30/06 | 1.5%/mo | 3%/mo | 200,000 | 33,948 | 52,145 | 1,169,742 | $ 0.20 | 1,260,724 | $ 0.20 |
| | | | | Difference —— | 2,000,000 | 649,543 | 938,624 | 13,247,715 | | 14,693,120 | |
| | | | | | | | $ 289,081 | | | 1,445,405 | |

**Dates on 1,000,000:**

| | Made | Maturity | Rate | Default Rate | Amount | Accrued Interest |
|---|---|---|---|---|---|---|
| | 11/17/04 | 11/30/05 | 1.5%/mo | 3%/mo | 400,000 | 159,873 |
| | 11/19/04 | 11/30/05 | 1.5%/mo | 3%/mo | 400,000 | 159,873 |
| | 12/17/04 | 11/30/05 | 1.5%/mo | 3%/mo | 200,000 | 79,937 |
| | | | | | 1,000,000 | 399,683 |

A



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Water & Sand International Capital, Ltd. | ) ) ) | |
| v. | ) ) | C.A. No. 1:08-CV-88-RCL |
| Capacitive Deionization Technology Systems, Inc. | ) ) ) | |
| _____ | ) | |

**STATEMENT OF UNDISPUTED FACTS**

The following facts are material to W&S's cross-motion for summary judgment and are undisputed:

1.  Chester Nosal is the sole shareholder of Water & Sand International Capital, Ltd.  Nosal Dec. ¶ 2.

2.  Water & Sand International Capital, Ltd. is incorporated in Delaware, and there is no record that Water & Sand International Capital, Inc. exists as an incorporated entity.  Nosal Dec. ¶ 3; Davies Dec. ¶12 and Exhibit C.

3.  Water & Sand International Capital, Ltd. has offices at Cupecoy Beach Club, Suite 201, Lowlands, St. Maartin, Netherlands Antilles.  Nosal Dec. ¶ 4.

4.  Water & Sand International Capital, Ltd. has a banking relationship with RBTT Bank St. Maartin, NV, Front Street, Emmaplein, Philipsburg, St. Maartin, Netherlands Antilles.  Nosal Dec. ¶ 5.

5.  The attorney for Water & Sand International Capital, Ltd. is Chester Nosal. Nosal Dec. ¶ 6.

6.   Water & Sand International Capital, Ltd. made a series of loans to CDT. Nosal Dec. ¶ 7; Second Amended Complaint, ¶¶4 and 8, *CDT v. Nosal*, 3-07CV1215-P (N.D.Tex. 5/20/2008).

7.   As of November 2, 2006 the loans from Water & Sand International Capital, Ltd. to CDT, including accrued interest, totaled $3,200,000.  Nosal Dec. ¶ 8.

8.   The note dated November 1, 2006, attached to the Complaint as Exhibit 1, was executed by Dallas Talley, chairman of CDT, and Phil Marshall, Chief Financial Officer of CDT.

9.   The note dated November 2, 2006, attached to the Complaint as Exhibit 2, was executed by Dallas Talley, chairman of CDT, and Phil Marshall, Chief Financial Officer of CDT.

10.  As of November 1, 2006, CDT intended to repay the debt evidenced by the note dated November 1, 2006.

11.  As of November 2, 2006, CDT intended to repay the debt evidenced by the note dated November 2, 2006.

12.  There is no Delaware Corporation named Water & Sand International Capital, Inc.  Nosal Dec. ¶ 3; Davies Dec. ¶12

13.  Chester Nosal does not represent an entity named Water & Sand International Capital, Inc.  Nosal Dec. ¶ 6.

14.  There is no entity named Water & Sand International Capital, Inc. with an office at Cupecoy Beach Club, Suite 201, Lowlands, St. Maarten, Netherlands Antilles. Nosal Dec. ¶ 10.

15.  The parties are unaware of any entity named Water & Sand International

Capital, Inc. with a banking relationship with RBTT Bank St. Maartin, NV, Front Street,

Emmaplein, Philipsburg, St. Maartin, Netherlands Antilles.  Nosal Dec. ¶ 11.

16.  CDT admitted in the Second Amended Complaint filed by CDT in Texas that

it borrowed millions of dollars from a company owned by Chester Nosal: Nosal

"represented his own company Water & Sand International Capital in arranging a series

of loans to CDT totaling in the seven figures."  Second Amended Complaint, Para. 4,

*CDT v. Nosal*, 3-07CV1215-P (N.D.Tex. 5/20/2008).

17.  CDT admitted that: "To date Nosal has advanced the company

approximately $2.2 million, with the present outstanding principal and interest balance

totaling over $5 million." Second Amended Complaint, Para. 8, *CDT v. Nosal*, 3-

07CV1215-P (N.D.Tex. 5/20/2008).

18.  CDT has not repaid the loans evidenced by the two notes at issue.    Nosal

Dec. ¶ 9.

Respectfully submitted,

/s/ David U. Fierst
Glenn A. Mitchell (#052233)
gamitchell@steinmitchell.com
David U. Fierst (#912899)
dfierst@steinmitchell.com
Stein, Mitchell & Mezines, LLP
1100 Connecticut Avenue
Suite 1100
Washington D.C. 20036
Tel:  202-737-7777
Fax: 202-296-8312

August 6, 2008

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Water & Sand International Capital, Ltd. | ) ) ) | |
| v. | ) ) | C.A. No. 1:08-CV-88-RCL |
| Capacitive Deionization Technology Systems, Inc. | ) ) ) | |
| _____ | ) | |

## [PROPOSED] ORDER

Plaintiff Water & Sand International Capital, Ltd. (W&S) having moved for partial summary judgment, and it appearing that there are no genuine disputes of material fact and that W&S is entitled to judgment, it is this ___ day of _____, 2008

ORDERED that the motion is granted, and it is

FURTHER ORDERED that the following facts shall be deemed established: Capacitive Deionization Technology Systems, Inc. (CDT) borrowed $3.2 million from W&S as of November 2, 2006 and has not repaid it, and it is

FURTHER ORDERED that the Court grants judgment correcting the scrivener's error in the notes at issue, and orders that the notes are hereby amended to correct the name of the payee to Water & Sand International Capital, Ltd..


_____
Royce C. Lamberth
United Stated District Judge